### In re Gary Karpin

[647 A.2d 700]

No. 92-570

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 21, 1993

Motion for Reargument Denied June 3, 1994

164

*Shelley A. Hill,* Bar Counsel, Montpelier, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams,* St. Johnsbury, for Respondent-Appellant.

**Per Curiam.** Respondent-attorney appeals the recommendation of the Professional Conduct Board that he be disbarred from the practice of law. Respondent claims that (1) his due process rights were violated by allowing Bar Counsel to prosecute the case and participate in the Board's deliberations, in violation of the doctrine of "internal separation of powers," (2) the evidence is insufficient to support many of the Board's key findings, and (3) the recommended sanction is inappropriate. We adopt the recommended sanction.

## I.

Respondent's first argument is that his due process rights were violated when the Board failed to disqualify Bar Counsel from prosecuting this case. Respondent claims that the dual role of Bar Counsel, as prosecutor and counsellor to the Board, violated the internal-separation-of-powers rule. The combination of investigatory and adjudicatory functions does not, by itself, violate due process. *In re O'Dea,* 159 Vt. 590, 601, 622 A.2d 507, 514 (1993). Because the Board is not the final decision-making authority and has the power only to recommend the sanction, respondent has not demonstrated any deprivation of due process rights in the disciplinary process. See *id.* (no violation of due process where Judicial Conduct Board prosecutor actively participated in the deliberative process).

## II.

Respondent's second claim is that the evidence does not support the findings. First, respondent argues that, because Bar Counsel carries the burden of proving respondent's misconduct by clear and convincing evidence, A.O. 9 Rule 13(C), on appeal all reasonable doubts and inferences must be resolved in his favor, citing *Emslie v. State Bar of California,* 520 P.2d 991, 113 Cal. Rptr. 175 (1974). *Emslie,* however, is distinguishable. Under the California

disciplinary system, findings of fact made by the disciplinary board are not binding on the reviewing court. *Id.* at 995, 113 Cal. Rptr. at 179. Under present Vermont law, however, this Court must accept the Board's findings of fact unless they are "clearly erroneous." A.O. 9 Rule 8(E). As long as the Board applies the correct standard of proof, the Board's findings will be upheld if they are "'clearly and reasonably supported by the evidence'" because the Board is the trier of fact. *In re Rosenfeld,* 157 Vt. 537, 543, 601 A.2d 972, 975 (1991) (quoting *In re Wright,* 131 Vt. 473, 490, 310 A.2d 1, 10 (1973)); cf. *In re G.S.,* 153 Vt. 651, 652, 572 A.2d 1350, 1351 (1990) (mem.) (findings of fact stand unless clearly erroneous because court correctly applied clear and convincing standard of proof in proceeding for termination of parental rights). Because the Board correctly applied the clear and convincing standard of proof, we will accept the Board's findings unless they are clearly erroneous.

The allegations of misconduct arise out of the respondent's representation of different clients in four unrelated matters. Each is addressed separately.

## A.

In the first case, respondent was contacted by Fred and Janet Gage to represent them in connection with soot damage they had sustained in their home due to what they believed was a faulty installation of a furnace and hot water heater. The company that installed the furnace and hot water heater initially agreed to correct the problem, but then denied liability. Respondent was employed to pursue the claim against the installer. He also knew that his clients were making a claim against their own insurer, Cooperative Fire Insurance Association, which ultimately paid approximately $12,000 in damages. When Mr. Gage telephoned respondent to discuss this settlement, respondent advised Mr. Gage not to tell him what he was receiving from the insurer "because it would hurt his dealing with the installer." The Gages executed a proof of loss which subrogated to their insurer their rights to collect damages from the installer.

Respondent settled the Gages' claim against the installer for $8,000 and informed the Gages that this settlement would have no effect on their claim against their own insurer because the claim against the installer "covered a different loss." When the insurer later learned of the settlement with the Gages, it demanded the return of the monies paid under the policy. When the Gages confronted respondent about the problem, he told them that he had not known they had filed a

claim against the insurer. He later told counsel for the insurer that there was no dual compensation "because the claims had covered different losses."

The hearing panel, in findings adopted by the Board, found that respondent's denial to his clients that he had any knowledge of the claim against the insurer was conduct involving dishonesty and misrepresentation in violation of DR 1-102(A)(4). The panel further found as aggravating factors that respondent submitted false statements to Bar Counsel in connection with the investigation of the matter and that he attempted to shift blame for the problem by suggesting that the Gages were attempting to defraud the insurer and the installer without his knowledge or involvement.

■ On appeal, respondent argues that the Gage complaint must be dismissed because the only evidence to support the Board's findings is the testimony of Janet Gage and that her testimony was not worthy of belief. It is the role of the trier of fact to "'determine the weight of the evidence and the persuasive effect of the testimony.'" *In re Rosenfeld*, 157 Vt. at 543, 601 A.2d at 975 (quoting *In re Wright*, 131 Vt. at 490, 310 A.2d at 10). We find no error in the Board finding Janet Gage credible.

In addition, respondent alleges that two findings are clearly erroneous: the finding stating that the Gages contacted the insurer with respondent's knowledge and consent and the finding stating that the Gages did not understand the subrogation form. There was credible testimony directly supporting each of these two findings, and thus, we uphold the factual determination made by the finder of fact. See *id.*

■ Respondent also claims that the panel failed to find several facts: that the Gages did not inform respondent of their contacts with and attempts to collect from the insurer; that Mrs. Gage met with McNally from the insurance company and told him that she was not getting any money from the installer on the same day that she signed the general release of the installer; and finally, that there was no evidence that respondent ever lied to or misled the Gages. Because there was credible evidence directly refuting respondent's alleged facts, the Board did not err by failing to so find. Cf. *Cano v. Cano*, 129 Vt. 598, 605, 285 A.2d 721, 726 (1971) (failure to make certain findings will not be reviewed where requested findings are of insufficient merit to affect the result).

## B.

In the second case, respondent was retained by Donald Coderre after a car dealer refused to fix Coderre's recently purchased, allegedly defective used automobile. Although two independent mechanics suspected that the car had either a faulty head gasket or engine block, the dealer refused to fix the car, thereby allegedly dishonoring the forty-five-day warranty. When Coderre contacted respondent, respondent indicated that Coderre had a good case and that Coderre should return the car to the dealer as defective goods under the Uniform Commercial Code and stop making payments on his bank loan, which was secured by the car. The bank subsequently repossessed the car.

Respondent performed minimal trial preparation by deposing the dealer and attending opposing counsel's depositions of Coderre and Coderre's witnesses. During pretrial negotiations, Coderre told respondent that he wanted the dealer to pay off the car loan and forgive the repair bills. For six months there was no action in the case.

In March of 1990, opposing counsel made respondent an offer, which Coderre rejected. On April 24, 1990, respondent wrote a letter informing Coderre that the case was scheduled as backup for May 1, 1990; however, Coderre never received this letter. The case was moved from backup to the schedule for May 1, but respondent did not immediately inform Coderre of this change. Respondent did not notify the witnesses of the trial date because, as he told his secretary, the case was going to settle. Thereafter, he telephoned Coderre at 10:00 p.m. at his home on April 28 to tell Coderre that the case was going to trial on May 1. When Coderre expressed his concern over the short notice and the possible unavailability of his witnesses, respondent falsely stated that the subpoenas were ready to be served the next day. Respondent discussed settlement with Coderre, who insisted that a $1500 settlement would be acceptable only if the dealer would pay off the car loan and forgive the repair bills.

Respondent agreed with the attorney for the car dealer to settle the case for $1500 in direct opposition to his client's wishes. When Coderre learned of this, he told respondent he had not authorized such a settlement and respondent must undo the settlement. Despite Coderre's wishes, respondent negotiated the check, signed the stipulation agreement and filed it with the court.

Coderre hired another attorney in order to try to rescind the settlement. Respondent learned that Coderre had informed his new attorney that respondent had settled without Coderre's authority.

Respondent then commenced a retaliatory small claims suit for the collection of unpaid services he had rendered on Coderre's case. The Board found that some of the fees sought were for services that had not been rendered. Coderre answered respondent's claim with allegations that respondent was incompetent and that respondent had settled the case without Coderre's authority. Although assisted by his new attorney, Coderre represented himself at small claims court. Coderre and respondent reached an oral agreement in which Coderre said he would drop his attempt to recover fees already paid to respondent if respondent would drop his attempt to collect more legal fees. They did not discuss malpractice or ethical complaints. Respondent drew up the stipulation, which included a waiver by Coderre of any malpractice or ethical complaints against respondent. Because Coderre was unsophisticated and did not read well, he signed the stipulation assuming it contained the terms to which the two had orally agreed. The Board found that respondent had violated DR 6-101(A)(2) by inadequately preparing for Coderre's trial and DR 1-102(A)(5) by attempting to squelch any ethical investigation into his conduct.

Respondent argues that several findings of fact are clearly erroneous because the panel chose to believe Coderre and ignore contradictory business-record evidence. As respondent states, the central question is whether Donald Coderre was a credible and trustworthy witness. The panel specifically found Donald Coderre to be a credible witness. We will uphold this factual determination. See *Lockwood v. Bougher*, 145 Vt. 329, 331, 488 A.2d 754, 755 (1985) (determining credibility of witnesses is exclusively matter for trier of fact). The findings that respondent challenges state the following: that respondent advised him not to continue to make payments on his bank loan; that Coderre was surprised that the car had been repossessed; the alleged implication that respondent was responsible for the loss of the evidence (the car) necessary for the lawsuit; that Coderre received no notice of the trial until two days before the trial; and finally, that respondent tricked Coderre into waiving his civil claims against respondent. Because there is credible evidence to support all of these findings, we defer to the Board's fact-finding and reject all of respondent's arguments concerning the Coderre complaint.

In addition to the factual disputes raised by respondent in the Coderre case, the Board noted three other factual situations in which respondent was found to have lied, and these situations are relevant to the determination of the appropriate sanction. Respondent lied to

the Board in stating that he had been ready to go to trial in the Coderre case, that the witnesses were ready to testify at the trial, and that he was authorized to settle the case.

## C.

In the third case, respondent was charged with accepting private employment in a matter in which he had had substantial responsibility while he was an Orleans County Deputy State's Attorney. Respondent had served as Deputy State's Attorney to Philip White, who had developed a unified, interagency procedure to coordinate the investigation and prosecution of child sex abuse cases. The panel found that this procedure demonstrated that the office took child sex abuse cases very seriously.

In July of 1988, as he was preparing to leave on vacation, Philip White advised respondent that a sex abuse case involving a thirteen-month-old baby, K.B., was coming into the office and that respondent was to handle the case. Respondent filed a CHINS petition and represented the State at a temporary detention hearing. Respondent was prepared to represent the State at a contested merits hearing but instead actively participated in the negotiated resolution of the case, which resulted in a stipulation signed by respondent. The panel found that respondent's participation in the case was substantial.

Later in the summer, after respondent had left the State's Attorney's office, the parents of K.B. asked respondent to represent them in the same matter. They told respondent that they wanted to hire someone already familiar with the case. Respondent testified that he was aware of the ethical issues raised by the representation of K.B. and that he had researched these issues and reached a reasoned conclusion that his representation was within the bounds of ethical conduct. The panel, however, found this testimony was not credible. The panel concluded that respondent clearly violated DR 9-101(B) (a lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee).

Respondent argues that three of the panel's findings are clearly erroneous. First, respondent contests findings that he characterizes as implying that any attorney involvement in sex abuse cases would be per se "substantial." Respondent mischaracterizes these findings. They do not state or imply any per se rule. Rather, these findings describe the office procedure for sex abuse cases and stress the seriousness with which the office addressed such cases.

Second, respondent challenges the finding that respondent's conduct was a "clear violation of DR 9-101(B) (a lawyer shall not accept

private employment in a matter in which he had had substantial responsibility while he was a public employee)." Although the panel did not cite any case law interpretations of the term "substantial," the factual findings clearly support the finding that respondent had substantial responsibility in the K.B. case.

Finally, respondent contests the finding that the panel did not find credible respondent's testimony that he researched the ethical implications of private representation of K.B. and had reached a reasoned conclusion that his representation would not violate any ethical rules. Respondent testified, however, that he could remember only "looking into the issue" but not whether he consulted case law. Moreover, the panel was free to believe or not believe respondent's testimony. See *In re Rosenfeld*, 157 Vt. at 543, 601 A.2d at 975 (panel must determine weight and persuasiveness of testimony).

## D.

In the final case, respondent was retained in June of 1991 by Nancy Ouellette to represent her in a modification-of-custody-and-support action. Ouellette told respondent that she would be in Virginia for most of the summer but could return for a hearing. Respondent advised Ouellette that she would not need to be present at the hearing. Ouellette was given a blank affidavit of income and assets to fill out and return to respondent's office. She completed most of the form but had questions as to whether to include certain income from rental property. She returned the unfinished and unsigned affidavit with a note asking for advice as to how it should be completed. Respondent did not respond to Ouellette's inquiry.

Respondent informed Ouellette of the hearing date but did not tell her she was required to attend. On the day of the hearing, respondent noticed that the affidavit was not signed. He instructed his office worker, Elaine Hall, to sign Ouellette's signature and notarize the signature. Hall quickly looked at some samples of Ouellette's signature and signed the affidavit.

When respondent arrived at family court, he told the magistrate that Ouellette could not attend the hearing because she was in mandatory training courses, and he presented the forged affidavit to opposing counsel. Because opposing counsel had questions about the contents of the affidavit and because Ouellette was not present, the hearing had to be continued until September. Opposing counsel sought costs for the continuance. In his memorandum in opposition to awarding costs, respondent again asserted that Ouellette had been

unable to attend the hearing due to mandatory training without which she would lose her job.

When Ouellette received a copy of this memo, she was surprised by the false assertions regarding job training and immediately informed respondent that she was only on vacation in Virginia. Before the September hearing, Ouellette completed another affidavit of income and assets, including her income from rental properties. During this hearing, the parties discovered that the first affidavit had been forged. Respondent informed the magistrate that he did not know who had signed it. Respondent also told the magistrate that he had been mistaken about Ouellette taking educational courses.

The magistrate filed a complaint with the Board on October 4, 1991, and sent a copy of this complaint to respondent. In early October, Elaine Hall resigned from her employment with respondent. Although no severance pay was discussed upon her resignation, she received four or five checks, each for $100, between October of 1991 and March of 1992. Respondent was informed by the Board of the complaints filed against him on October 28, 1991. On November 14, 1991, respondent sent Hall an affidavit, which he had drafted and which falsely stated that Elaine Hall had inadvertently signed Ouellette's affidavit. Accompanying this affidavit was a "severance pay" check for $100. Hall signed the affidavit. As part of the Board's investigation, Hall was interviewed and confirmed the information in the November affidavit. Shortly after this interview, Hall received another "severance pay" check for $100. Hall also submitted another affidavit in January confirming the November affidavit. On June 3, 1992, however, Hall was subpoenaed to a deposition and was given "use and fruits" immunity in return for her testimony. At the deposition on June 4, 1992, and at the hearing on June 23, she recanted her earlier statements and stated instead that respondent had noticed, moments before leaving for the hearing, that the Ouellette affidavit was unsigned and he had instructed Hall to sign the form and notarize it.

The hearing panel specifically found that respondent violated DR 6-101(A)(2) by failing to respond to his client's questions about completing the affidavit and failing to notice that it was unsigned. More importantly, the panel found that respondent's submission of the false affidavit violated DR 1-102(A)(5) (conduct prejudicial to the administration of justice), DR 7-102(A)(4) (knowingly using false evidence), and DR 7-102(A)(6) (the creation and use of false evidence). The panel also found that, throughout the disciplinary process,

respondent had submitted false statements and false evidence and had attempted to shift the blame to others, either his clients or his staff. This pattern of dishonesty, fraud and misrepresentation violated DR 1-102(A)(4).

Respondent's arguments challenge the panel's decision to find Hall's testimony credible and respondent's testimony not credible. As stated above, credibility is left to the fact-finder unless the findings are clearly erroneous. See *In re Rosenfeld*, 157 Vt. at 543, 601 A.2d at 975 (panel must determine weight and persuasiveness of testimony). Respondent claims that several findings are clearly erroneous. These findings state: that the signature on the July affidavit is not that of Ouellette and that Ouellette had not signed it before Elaine Hall as suggested by respondent; that respondent noticed that the signature was missing, that he asked Hall to forge the signature, and that Hall quickly looked through the files for samples of Ouellette's signature; that Hall received a check marked "severance pay" along with the affidavit that respondent had drafted for her on November 11; and that respondent misled or lied to the magistrate. There was ample credible evidence to support each of these findings, and we defer to the Board's factual findings. See *id.* (findings must be upheld if "clearly and reasonably supported" by evidence).

## III.

Bar Counsel contends that the Board erred in dismissing a charge that respondent violated DR 1-102(A)(7), prohibiting a lawyer from engaging in "any other conduct that adversely reflects on the lawyer's fitness to practice law." We defer to the Board's ruling because it is clearly and reasonably supported by the evidence.

## IV.

Finally, respondent contends that the sanction is not appropriate for the alleged misconduct. In the Gage case, respondent violated DR 1-102(A)(4) (engaging in conduct involving dishonesty and misrepresentation). In the White case, respondent violated DR 9-101(B) (accepting private employment in a matter in which he had substantial responsibility as a public employee). In the Coderre case, respondent violated DR 6-101(A)(2) (handling a legal matter with inadequate preparation) and DR 1-102(A)(5) (attempting to foreclose an ethical investigation of his conduct, which constituted conduct prejudicial to the administration of justice). In the Ouellette case,

respondent violated DR 1-102(A)(4) (engaging in conduct involving dishonesty and misrepresentation), DR 7-102(A)(4) (using false evidence), DR 7-102(A)(6) (creating false evidence), DR 6-101(A)(2) (handling a legal matter with inadequate preparation), and DR 1-102(A)(5) (submitting false evidence and lying to magistrate, which constituted conduct prejudicial to the administration of justice).

Although the Board's recommended sanction of disbarment is not binding upon this Court, it is accorded deference. *In re Berk*, 157 Vt. 524, 527–28, 602 A.2d 946, 948 (1991). Moreover, the Board relied upon the American Bar Association Standards for Imposing Lawyer Sanctions (1991) (ABA Standards), which we have found useful in the past. E.g., *In re Berk*, 157 Vt. at 532, 602 A.2d at 950. Under these standards, the factors to be considered in imposing sanctions are the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct and the existence of aggravating or mitigating factors. ABA Standards, *supra*, at 30.

Although the Board focused on four of the ABA provisions, we are convinced that standards 4.61 and 6.11 together require disbarment in this case. Under standard 4.61, disbarment is appropriate "when a lawyer knowingly deceives a client with the intent to benefit the lawyer . . ., and causes serious injury or potentially serious injury to a client." The Board found that respondent had lied to the Gages, and the result was that the Gages were sued by their insurer and incurred additional attorney's fees. The Board also found that respondent lied to his client Ouellette about the necessity of being present at the hearing. Moreover, the Board found that respondent had engaged in a pattern of deceit in an attempt to cover up his own misconduct.

Under standard 6.11, disbarment is appropriate "when a lawyer, with the intent to deceive the court, makes a false statement, submits false document . . ., and causes serious or potentially serious injury to a party." The Board found that respondent had lied to the magistrate about the reason for Ouellette's absence from the July hearing and that he had submitted a forged affidavit to the court. In addition, respondent lied to the Board throughout the disciplinary proceedings and induced Hall to make false statements. This could have subjected Hall to prosecution, an enormous potential injury.

Disbarment is *an* appropriate sanction under the ABA Standards, and the fact that almost every aggravating factor is present confirms disbarment as *the* appropriate sanction. See ABA Standards, *supra*, at 9.22 (listing aggravating factors). Respondent had dishonest and selfish motives. He engaged in a pattern of misconduct.

He committed multiple offenses. He engaged in bad faith obstruction of the disciplinary proceeding by lying to the panel and attempting to have Coderre waive his right to bring a complaint. He submitted false evidence and used other deceptive practices during the disciplinary process. He refused to acknowledge the wrongful nature of his conduct. He took advantage of a vulnerable victim, especially Coderre. The only mitigating factors that were present were his inexperience in the practice of law and the absence of a prior disciplinary record. See *id.* at 9.32. Due to the brevity of his practice, however, the lack of past disciplinary actions is not significant. The Board properly determined the appropriate sanction for respondent's conduct, and we adopt its recommendation.

*Judgment that Gary Karpin is removed from the office of attorney and counsellor at law and his name is stricken from the rolls.*