**In re PRB Docket No. 2007-046 and**

**In re PRB Docket No. 2007-047**

[989 A.2d 523]

Nos. 08-214 & 08-215

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 25, 2009

*Beth DeBernardi*, Deputy Disciplinary Counsel, Burlington, for Petitioner.

*Robert K. Reis* of *Reis, Urso, Ewald & Anderson, PLLC*, Rutland, for Respondents.

*William H. Sorrell*, Attorney General, *Michael O. Duane* and *John H. Treadwell*, Assistant Attorneys General, and *Jane Woodruff*, Executive Director, State's Attorneys' and Sheriffs' Department, Montpelier, for Amicus Curiae Office of the Vermont Attorney General.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Renee Mobbs*, Law Clerk (On the Brief), Montpelier, for Amicus Curiae Office of the Defender General.

*Paul Van De Graaf*, Acting United States Attorney, *Carol L. Shea, William B. Darrow* and *Timothy B. Tomasi*, Assistant United States Attorneys, Burlington, and *David Margolis*, Acting Deputy Attorney General, and *Douglas N. Letter* and *Lowell V. Sturgill, Jr.*, Attorneys Civil Division, Washington, D.C., for Amicus Curiae United States of America.

¶ 1. **Skoglund, J.** We ordered review of these attorney-discipline cases to consider the application of the Vermont Rules of Professional Conduct to two attorneys who misled a potential witness

about whether they were recording a telephone conversation. A hearing panel of the Professional Responsibility Board determined that the attorneys had violated Rule 4.1 — which provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person" — but had not violated Rule 8.4(c) — which establishes that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." On review, the Office of Disciplinary Counsel argued that the hearing panel's conclusion on Rule 4.1 was well founded, but that it had erred in concluding that the attorneys had not violated Rule 8.4(c). We affirm the hearing panel's decision and find that a private admonition is the appropriate sanction for the offending conduct.

¶ 2. The parties stipulated to the following facts. Respondent attorneys were partners in a law practice and represented a client in a serious criminal matter. During trial, a potential witness contacted them, claiming to have information that tended to show their client's innocence. Respondents obtained a continuance until the following day to ascertain the witness's potential testimony. They quickly arranged to interview the witness by telephone and to record the call. During the call, the witness asked respondents whether they were recording the interview. One respondent said "No," and the other, attempting to distract the witness, added "She's on speaker phone, so I can hear you." The witness later filed complaints with the Office of Disciplinary Counsel against both respondents. The parties jointly recommended that the hearing panel conclude that respondents had violated Rules 4.1 and 8.4(c). The disciplinary charges were premised at all times solely on the act of misleading the witness about the recording, and not on the recording itself.

¶ 3. The hearing panel first recounted the history of professional disciplinary consequences for attorneys who surreptitiously record conversations, noting that the American Bar Association issued a formal opinion in 1974 concluding that attorneys — except prosecutors — should not record any conversation without obtaining consent from all parties to the conversation. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 337 (1974). Many state bar association ethics committees followed the ABA recommendation in their own advisory opinions, with some variation as to the scope of the prosecutorial exception; in some states, the

exception was extended, as a matter of fairness, to defense attorneys. See, e.g., State Bar of Ariz. Comm. on the Rules of Prof'l Conduct, Op. 90-02 (1990). The ABA recommendation was premised on the duty of candor embodied in the since-superseded provisions of the ABA Code of Professional Conduct. Several state bar committees, however, declined to follow the ABA's formal opinion, concluding that surreptitious recording itself did not necessarily violate the conduct rules in those states, and that surreptitious recording, absent some other prohibited act, would not be a basis for discipline.

¶ 4. In 2001, the ABA formally revoked the 1974 opinion, replacing it with an opinion stating that mere surreptitious recording in states — like Vermont — where such recording is otherwise lawful, is not *inherently* deceitful and thus may be ethically permissible. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001). The opinion included a prohibition on nonconsensual recording "only where it is accompanied by other circumstances that make it unethical." *Id.* at 1201:103. One such circumstance, the opinion went on to hold, was falsely denying that a conversation is being recorded. *Id.* at 1201:104.[1] "That a lawyer may record a conversation with another person without that person's knowledge and consent does not mean that a lawyer may state falsely that the conversation is not being recorded." *Id.* Put another way, the opinion held that a "lawyer may not . . . falsely represent that a conversation is not being recorded." *Id.* at 1201:101. The opinion noted that such false representations would "likely violate Model Rule 4.1, which prohibits a lawyer from making a false statement of material fact to a third person." *Id.* at 1201:104. And although the word "likely" might suggest equivocation, the ABA committee went on to conclude, without reservation, that a "lawyer who records a conversation without the consent of a party to that conversation

---

[1] The hearing panel characterized the opinion's treatment of false statements as dictum. We pause to note that the distinction between the holding of a case and dictum is of limited significance in a bar association advisory ethics opinion — like Formal Opinion 01-422 — as opposed to a contested case in which a court must resolve a live dispute arising from particular facts. Indeed, it is perhaps most accurate to characterize the entire Formal Opinion as dictum insofar as *none* of it was necessary to resolve a live controversy. In any event, we do not agree with the panel's conclusion that Formal Opinion 01-422 was equivocal about the propriety of lying about recording conversations.

*may not represent that the conversation is not being recorded."* *Id.* at 1201:106 (emphasis added).

¶ 5. As noted above, the hearing panel in the instant appeal found that respondents had violated Rule 4.1, but not Rule 8.4(c), and that a private admonition was the appropriate sanction. Now, on review, we consider each rule in turn.[2]

## I. Rule 4.1

¶ 6. Rule 4.1 provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person." As the hearing panel noted, the rule requires not only that the attorney's statement be false, but that the falsity concern a material fact. Here, the hearing panel found that the misrepresented fact — whether the call was being recorded — was material to the witness. Respondents believed that the witness would have terminated the call if he had found out that he was being taped. We agree, on the record before us, that the recording of the call was a material fact.

¶ 7. We also agree that respondents knowingly made a false statement about the recording and thus violated Rule 4.1. One respondent stated in plain terms that she was not recording the conversation, when in fact she was. The second respondent attempted to distract the witness from the issue of recording entirely, by making a statement about the speakerphone. Furthermore, she did not disagree with or correct the misrepresentation made by the first respondent. Both respondents' actions, therefore, violate Rule 4.1. See V.R.Pr.C. 4.1 cmt. ("A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act."); see also *Miss. Bar v. Att'y ST*, 621 So. 2d 229, 233 (Miss. 1993) ("We find, however, that Attorney ST stepped over the line . . . when he blatantly denied, when asked, that he was taping the conversations. Rule 4.1 comment expressly states that '[a] lawyer is required to be truthful when dealing with others on a client's behalf.' ").

¶ 8. As the hearing panel took pains to make clear, the charges here are based entirely on these false statements, and not on the

---

[2] The Vermont Rules of Professional Conduct were amended effective September 1, 2009. As the acts underlying this disciplinary action occurred prior to the amendment, we base this opinion on the prior version of the rules and associated comments.

mere surreptitious recording itself, which was lawful. We therefore express no opinion today on the distinct question of whether surreptitious recording, without an additional unethical act such as lying, would violate Rule 4.1.

## II. Rule 8.4(c)

¶ 9. Respondents were additionally charged with violating Rule 8.4(c), which prohibits a member of the Bar from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." Although the hearing panel dismissed these charges based on its own recent cases finding violations of 8.4(c), the text and construction of the rule persuade us that the rule was meant to reach only conduct that calls into question an attorney's fitness to practice law. We reach this conclusion by studying the rule's immediate context and its function alongside Rule 4.1, and by reviewing a considerable body of authority.

¶ 10. An examination of the entire text of Rule 8.4 provides necessary context for interpreting subsection (c). Rule 8.4 provides as follows:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) engage in a "serious crime," defined as illegal conduct involving any felony or involving any lesser crime a necessary element of which involves interference with the administration of justice, false swearing, intentional misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime";

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;

(g) discriminate against any individual because of his or her race, color, religion, ancestry, national origin, sex, sexual orientation, place of birth or age, or against a qualified handicapped individual, in hiring, promoting or otherwise determining the conditions of employment of that individual; or

(h) engage in any other conduct which adversely reflects on the lawyer's fitness to practice law.

V.R.Pr.C. 8.4.

¶ 11. The subsections in the rule draw a distinction between two types of prohibited behavior. Some subsections are quite specific as to the behavior proscribed, while others prohibit general categories of behavior. Subsections (a), (b), (e), (g), and, arguably, (f) proscribe behavior with specificity: subsection (a) proscribes violation or attempted violation of the rules; subsection (b) prohibits engaging in serious crimes — a term which is then exhaustively defined; subsection (e) proscribes stating or implying the ability to improperly influence a government official; subsection (g) prohibits discrimination on enumerated bases in enumerated contexts; and subsection (f) proscribes knowingly assisting a judge in violating the standards governing her behavior. On the other hand, subsections (c), (d), and (h) prohibit engagement in a broad range of "conduct," defined as: "conduct involving dishonesty, fraud, deceit or misrepresentation," (c), "conduct that is prejudicial to the administration of justice," (d), and "other conduct which adversely reflects on the lawyer's fitness to practice law," (h).

■ ¶ 12. Reading the subsections in the context of one another, subsection (h) is meant to capture other conduct similar to that described in the preceding subsections and to specifically define such conduct as that which reflects adversely on fitness to practice law. See generally 2A N. Singer & J. Singer, Statutes and Statutory Construction § 47:16, at 347-57 (7th ed. 2007). Thus, while Rule 8.4(c) is "broad and . . . encompasses conduct both within and outside the realm of the practice of law," ABA Ctr. for Prof'l Responsibility, Annotated Model Rules of Prof'l Conduct 583

(6th ed. 2007), we are not prepared to believe that *any* dishonesty, such as giving a false reason for breaking a dinner engagement, would be actionable under the rules. Rather, Rule 8.4(c) prohibits conduct "involving dishonesty, fraud, deceit or misrepresentation" that reflects on an attorney's fitness to practice law, whether that conduct occurs in an attorney's personal or professional life. V.R.Pr.C. 8.4(c). This affirms the hearing panel's conclusion that subsection (c) applies only "to conduct so egregious that it indicates that the lawyer charged lacks the moral character to practice law."

¶ 13. Further support for this result is found in the comment to the rule. The comment repeatedly stresses the importance of holding attorneys accountable for only those behaviors that reflect poorly on their fitness to practice. The comment begins: "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as . . . the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication." It continues: "Although a lawyer is *personally* answerable to the entire criminal law, a lawyer should be *professionally* answerable only for offenses that indicate lack of those characteristics relevant to law practice." V.R.Pr.C. 8.4 cmt. (emphasis added). The comment goes on to note that "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." *Id.*

¶ 14. Our narrow interpretation of Rule 8.4(c) ensures that Rule 4.1 is not reduced to mere surplusage. A fundamental principle of construction assumes that the drafters intended no redundancy. See *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 17, 178 Vt. 77, 872 A.2d 292 ("[W]e presume that legislative language is inserted advisedly and not intended to create surplusage." (quotation omitted)); *Robes v. Town of Hartford*, 161 Vt. 187, 193, 636 A.2d 342, 346-47 (1993) (declining to interpret portions of a statute as redundant). Rule 4.1 provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person." V.R.Pr.C. 4.1. A broader interpretation of Rule 8.4 would result in all behavior that violates Rule 4.1 running afoul of Rule 8.4(c) as well, since Rule 8.4(c) could conceivably apply to any untruth told to anyone for any purpose. Admittedly, some false statements made to third persons during the course of representation could also reflect adversely on a lawyer's fitness to practice, thus violating both

rules. However, not all misrepresentations made by an attorney raise questions about her moral character, calling into question her fitness to practice law. If Rule 8.4 is interpreted to automatically prohibit "misrepresentations" in all circumstances, Rule 4.1 would be entirely superfluous. There must be some meaning for Rule 8.4(c) independent of Rule 4.1 — for we presume that the drafters meant every rule to have *some* meaning. See *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 14, 179 Vt. 214, 892 A.2d 191 (rejecting interpretation of statute as creating a superfluous category); *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994) ("In determining the legislative intent, we may review the entire statutory scheme. Our interpretation must further fair, rational results." (citation omitted)).

¶ 15. Reading Rule 8.4 as applying only to misrepresentations that reflect adversely on a lawyer's fitness to practice law is additionally supported by authority from other jurisdictions. Sister courts have acknowledged that Rule 8.4(c) cannot reasonably be applied literally — and with the same reasoning we have employed. See, e.g., *Apple Corps Ltd. v. Int'l Collectors Soc'y*, 15 F. Supp. 2d 456, 475-76 (D.N.J. 1998) (rejecting "the literal application" of 8.4(c) on the grounds that it renders Rule 4.1 "superfluous"); see also D.C. Bar Legal Ethics Comm. Op. 323 (2004) ("Clearly [Rule 8.4(c)] does not encompass all acts of deceit — for example, a lawyer is not to be disciplined professionally for committing adultery, or lying about the lawyer's availability for a social engagement."). Jurisdictions have also chosen to expressly limit the scope of their versions of Rule 8.4 to "conduct which indicates that an attorney lacks the character required for bar membership," *id.*, or "conduct of so grave a character as to call into question the lawyer's fitness to practice law," Utah State Bar Ethics Advisory Op. Comm., Op. 02-05, ¶ 4 (2002) (quotation omitted), on the basis of the comments accompanying the rule. See also D. Isbell & L. Salvi, *Ethical Responsibility of Lawyers for Deception by Undercover Investigators and Discrimination Testers: An Analysis of the Provisions Prohibiting Misrepresentation Under the Model Rules of Professional Conduct*, 8 Geo. J. Legal Ethics 791, 816-18 (1995) (advocating a narrow construction of the rule for all the aforementioned reasons).

¶ 16. Finally, in *Attorney ST*, the Supreme Court of Mississippi concluded that an attorney's misrepresentation about the taping of a conversation with a witness violated Rule 4.1 but not 8.4(c). 621

So. 2d at 233. In addition, the ABA Committee on Ethics and Professional Responsibility has recently issued a formal opinion on whether electronically recording a conversation without knowledge of the parties violates Model Rule 8.4(c). ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001). The Committee concluded that recording conversations in this manner does not necessarily violate Model Rule 8.4(c), but added the following limitation, citing *Attorney ST*:

> That a lawyer may record a conversation with another person without that person's knowledge and consent does not mean that a lawyer may state falsely that the conversation is not being recorded. To do so would likely violate Model Rule 4.1, which prohibits a lawyer from making a false statement of material fact to a third person.

*Id.* at 1201:104. The Committee's note of caution regarding the ramifications of falsely denying that a conversation is being recorded is limited to Rule 4.1, even though the broader context of the opinion concerns Rule 8.4(c). If the Committee or the court in *Attorney ST* had concluded that the same behavior violated Rule 8.4(c), it had every opportunity and reason to say as much. Their silence indicates that they did not believe the scope of Rule 8.4(c) reached this far and we, likewise, refuse to so extend it.

¶ 17. In the course of zealously representing a client who was the defendant in a serious criminal matter, the respondents in this case engaged in an isolated instance of deception. All indications are that respondents earnestly believed that their actions were necessary and proper. Indeed, the panel found that respondents violated the rules out of a "determination to defend their client against serious criminal charges," and nothing else. Under such circumstances, respondents' actions simply do not reflect adversely on their fitness to practice. The rules acknowledge that "conflicting responsibilities are encountered" in the practice of law, and that "difficult ethical problems arise from conflict between a lawyer's responsibilities to clients . . . and to the lawyer's own interest in remaining an upright person." V.R.Pr.C., Preamble. Nevertheless, the rules are "rules of reason," and should be applied "in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation." V.R.Pr.C., Scope. This admonition resonates here.

¶ 18. For our review we asked for briefing from the United States Attorney, the Attorney General of Vermont, and the Defender General, along with the Office of Disciplinary Counsel, concerning the existence and scope of exceptions to Rules 4.1 and 8.4(c) for prosecuting attorneys and defense attorneys in criminal matters. We also requested briefing on the responsibility of attorneys for the activities of police, investigators, or other agents acting on their behalf. The Court is aware that there may be circumstances in which misrepresentations that facially violate the rules are useful, perhaps even necessary, to the functioning of the law-enforcement and judicial systems. Attorneys general and state's attorneys, as part of that system, may employ such methods themselves, or may direct others to employ them, as they investigate discrimination, consumer fraud, or other crimes.[3] Some courts and advisory panels have concluded that Rule 4.1 does not apply to prosecuting attorneys' activities, or applies differently to them than to other attorneys. Many courts and panels, too, have concluded that as a matter of fairness the prosecutorial exceptions to the rule must also extend to the defense bar.

¶ 19. Having reviewed the briefing and considered the questions examined therein, we conclude that any exception to the prohibitions in Rule 4.1 should come, not summarily from this Court, but rather through a process that allows input from, and collaboration among, all of the groups potentially affected by a rule change. To this end, we will establish, by separate administrative order, a joint committee comprised of members from the Civil Rules Committee, the Criminal Rules Committee, and the Professional Conduct Board, to consider whether the rules should be amended to allow for some investigatory misrepresentations, and, if so, by whom and under what circumstances. We make no comment today on the merits of the questions that we will charge the committee to consider.

## III. Sanction

¶ 20. The hearing panel adopted disciplinary counsel's recommendation that the appropriate sanction is a private admonition. Disciplinary counsel, while advocating on appeal that we

---

[3] One of the amici suggested that warrants offer a safe harbor, but does not explain how a judicial finding of probable cause for a wire warrant, so called, could authorize an ethical violation prohibited by the rules.

find an additional rule violation, continues to support a private admonition. Our review of the panel's sanction decision is deferential. *In re Farrar*, 2008 VT 31, ¶ 5, 183 Vt. 592, 949 A.2d 438 (mem.). We have been particularly deferential to panel decisions when the panel has relied on the ABA Standards for Imposing Lawyer Sanctions (ABA Standards), which we have relied upon in the past. See *In re Karpin*, 162 Vt. 163, 173, 647 A.2d 700, 706 (1993) (per curiam). The panel did so here.

¶ 21. The hearing panel first noted that the attorneys here had not violated any duty to their clients, but rather had violated the rules out of a "determination to defend their client against serious criminal charges." In so doing, as the panel stated, respondents had violated their duty to the public, but did so only in an effort to protect their client.

¶ 22. ABA Standards § 5.13 provides that public reprimand "is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." *ABA Standards, in* ABA Compendium of Professional Responsibility Rules and Standards 429 (2008 ed.). ABA Standards § 5.14 provides that a private admonition "is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law." *Id.*[4]

¶ 23. The hearing panel noted that the severity of the sanctions provided for in the two rules depends in part on respondents' mental state. Although the panel correctly noted that respondents' mental state was more than merely negligent, the panel did not find, and nor do we, that respondents' mental state was particularly culpable. Respondents found themselves in a very unusual set of circumstances and acted in the best interests of their client, not for any personal gain. We do not find that respondents' mental state argues in favor of a severe penalty.

¶ 24. The panel's decision to order a private admonition was also premised on several mitigating factors. Respondents cooperated with disciplinary counsel and were motivated by a desire to help their client rather than advance their own selfish ends. See *id.* at 434-35 (listing factors which may be considered in mitigation

---

[4] As noted in ABA Standards § 2.6, the terms "admonition" and "private reprimand" are synonymous. *Id.* at 424.

under ABA Standards § 9.32). Finally, the panel noted our statement, in Administrative Order 9, Rule 8(A), that "in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer, . . . an admonition [may] be imposed." Here, there was no injury to the client, little damage to the public trust, the legal system, or the profession, and nothing in the record suggests a likelihood of repetition.

¶ 25. Thus, we affirm the panel's conclusion that respondents violated Rule 4.1 and uphold its imposition of a private reprimand for the reasons stated above. Accordingly, we hereby privately reprimand respondents for violating Rule 4.1 by falsely denying that they were recording a telephone conversation with a potential witness.

*Affirmed.*

¶ 26. **Burgess, J.,** concurring. I concur, reluctantly, in affirming the violation of Rule 4.1 because that rule does expressly, and broadly, prohibit all intentionally dishonest representations by attorneys, even when such misrepresentations are otherwise legal and serve a lawyer's duty. Our conclusion that technically dishonest conduct strictly on behalf of a client's legitimate interests violates Rule 4.1 as written, but not Rule 8.4, appears to be at odds with what are otherwise fundamental obligations of government and defense attorneys. Bar counsel insists that no such issue arises here, but the wider impact of this ruling on the investigative operations of the executive branch, and its chilling implications for the public and private defense bar, are inescapable and troubling.

¶ 27. It seems at least unclear whether the judicial branch, through an ethical rule, might unconstitutionally interfere with valid, and even statutory, executive branch functions directed by attorneys supervising undercover discrimination, consumer fraud, and criminal investigations that require surreptitious taping and deceptive impersonations, including those authorized by warrant. See, e.g., V.R.Pr.C. 8.4(a) (declaring it misconduct for a lawyer to violate the rules "through the acts of another"); V.R.Pr.C. 5.3(b) & (c) (making a supervising lawyer responsible for investigator compliance with the rules and professional obligations of the lawyer). Related separation of powers questions, as well as due process and equal protection issues, arise over judicial curtailment

of otherwise legal and valid tactics available to public defender investigators looking into criminal allegations against their clients.[5]

¶ 28. Not presented in an actionable context in the instant appeal, such issues remain unresolved. Equally unresolved, then, is the potential for ethical violation by attorneys involved in law enforcement and criminal defense who, without lucre or malice, oversee entirely legal investigative strategies executed by staff or agents. Failure of the rules to recognize and allow for justified and necessary deception in the course of law enforcement and defense investigation is reminiscent of Secretary of State Henry Stimson's foolish prohibition of diplomatic codebreaking between the World Wars on the high-minded premise that "Gentlemen do not read each other's mail."[6] Common sense might dictate that such a blind principle, like Rule 4.1 found violated in the instant case, ignores the legal and objectively legitimate demands of the real world.

¶ 29. These points are raised only to lament the unfortunate absurdity of this violation and to emphasize the need for the committee to reconsider the literal application of Rule 4.1 to executive and defense investigations relating to law enforcement.

¶ 30. **Reiber, C.J.**, concurring in part and dissenting in part. While I concur with parts I and III of the majority opinion and agree that the attorneys violated Rule 4.1, that they should be sanctioned with a private admonition, and that we should establish a joint committee to consider amending the rules, I dissent from part II of the majority's opinion. In my view, the attorneys also violated Rule 8.4(c) when they lied to a potential witness about

---

[5] Respondents here, for example, were interrupted at almost the last minute of their trial defense of a client charged with second degree murder to immediately respond to an unsolicited claim by a jailhouse tipster of exculpatory evidence implicating another as the murderer. That the tipster, during the phone interview, then expressed concern about being recorded would cause reasonable attorneys to question whether an inmate, a stranger to them and potentially a target of retribution for snitching, would volunteer his proffered information on the record, or could be relied upon to testify to the same effect, or at all, in court. Given the exigent circumstances and the absence of any corrupt motive whatsoever, the inherent uncertainty of the situation was arguably sufficient to justify the surreptitious recording.

[6] H. Stimson & M. Bundy, *On Active Service in Peace & War* 188 (1948). Secretary of State Stimson (Hoover Administration, 1929-33) yielded his views as Secretary of War Stimson in 1940, citing changing times. D. Kahn, *The Codebreakers* 360 n.* (1996).

whether they were recording a telephone conversation. In short, I cannot agree with the majority's conclusion that bold-faced lying is not "conduct involving dishonesty, fraud, deceit or misrepresentation." V.R.Pr.C. 8.4(c).

¶ 31. Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The hearing panel concluded that although there was a "misrepresentation to the witness," the conduct in question was not "so egregious that it indicates that the lawyer[s] charged lack[] the moral character to practice law." Accordingly, the panel found no violation of Rule 8.4(c), which it concluded was intended to apply *only* to such egregious conduct as commingling of client funds, forging fee agreements, or making false statements on attorney-licensing statements. I disagree with the panel's narrow interpretation of Rule 8.4(c).

¶ 32. Rule 8.4 generally governs "misconduct." It provides, in pertinent part, as follows:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) engage in a "serious crime," defined as illegal conduct involving any felony or involving any lesser crime a necessary element of which involves interference with the administration of justice, false swearing, intentional misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime";

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

V.R.Pr.C. 8.4.

¶ 33. The rule does not explicitly contain the limit that the hearing panel inferred — that it applies only "to conduct so egregious that it indicates that the lawyer charged lacks the moral character to practice law." The panel cited several previous Vermont disciplinary rulings in which more serious conduct was found to violate Rule 8.4(c), and the panel relied upon those

decisions to draw the conclusion that *only* such serious conduct violates Rule 8.4(c). Upon close inspection, this narrow interpretation is untenable.

¶ 34. The rationale for narrowly construing subsection (c) is, principally, the comment published alongside Rule 8.4. The comment does not explicitly limit its reach to any single subsection of the rule, but its language strongly suggests that it is meant to apply only to subsection (b). The comment reads as follows:

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

V.R.Pr.C. 8.4 cmt. As the opening clause of the comment suggests, it applies directly to subsection (b) only. That subsection concerns illegal acts and prohibits only those acts that involve, among other things, intentional misrepresentation, fraud, or deceit. Subsection (b) is the only subsection of Rule 8.4 that, like the comment, places its focus on illegal conduct. By contrast, subsection (c) concerns all "conduct" without limitation as to legality. The illegality-centered language of the comment strongly suggests that the comment is not meant as a guide to subsection (c) at all. Thus, the hearing panel erred in relying on the comment in support of its conclusion that Rule 8.4(c) should be read narrowly.

¶ 35. The majority opines that Rule 8.4(c) should be construed as prohibiting only "egregious" misrepresentations because to construe it otherwise would render Rules 4.1 and 8.4(c) redundant.

*Ante,* ¶¶ 12, 14. It further concludes that because Rule 4.1 already forbids "false statement[s] of material fact" made in "the course of representing a client," Rule 8.4(c) must be construed as applying only to misrepresentations that are not covered by that rule. See *ante,* ¶ 14. The conclusion of the majority and of the hearing panel below was derived largely from a law review article that was concerned only with the implications of misrepresentations made by discrimination testers as to their identity and purpose — facts which the article concluded are not "material" and which may, therefore, be falsified without violating Rule 4.1. See D. Isbell & L. Salvi, *Ethical Responsibility of Lawyers for Deception by Undercover Investigators and Discrimination Testers: An Analysis of the Provisions Prohibiting Misrepresentation Under the Model Rules of Professional Conduct,* 8 Geo. J. Legal Ethics 791, 817 (1995). Thus, according to the authors of that article, it would be incongruous to construe Rule 8.4(c) as prohibiting "lesser misrepresentations than those prohibited by Rule 4.1(a) — e.g., those involving less than material misrepresentations — but rather [Rule 8.4(c)] must apply to graver ones." *Id.* (emphasis omitted). I find this logic unpersuasive in the context of the Rules of Professional Conduct.

¶ 36. While, as a general matter, it is reasonable to presume that the drafters of rules do not intend to create redundancies, see *ante,* ¶ 14, the interpretive presumption against redundancy is weaker in the Rules of Professional Conduct than in other contexts. Here, penalties are assessed based not on the number of transgressions, but rather on the totality of the circumstances surrounding the misconduct. See V.R.Pr.C., Scope ("Moreover, the rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations."); *In re Karpin,* 162 Vt. 163, 173, 647 A.2d 700, 706 (1993) (per curiam) ("[T]he factors to be considered in imposing sanctions are the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct and the existence of aggravating or mitigating factors." (citation omitted)). The mere fact that a single act may be a violation of two rules does not require us to adopt an interpretation of Rule 8.4(c) that is not supported by the language of the rule.

¶ 37. Regardless of whether the majority is correct to place so much weight on avoiding redundancies here, *ante,* ¶ 14, the

majority's interpretation of Rule 8.4(c) does not avoid surplusage. Rather, the interpretation adopted by the majority today — in holding that Rule 8.4(c) applies only to conduct that "reflects on an attorney's fitness to practice law," *ante*, ¶ 12 — makes Rule 8.4(c) superfluous in light of Rule 8.4(h), which already prohibits "conduct which adversely reflects on the lawyer's fitness to practice law."[7] Thus, resorting to the interpretive principle of avoiding surplusage does not get us anywhere in determining the proper scope of Rule 8.4(c).

¶ 38. A better interpretive principle to apply here would be to avoid vagueness. Cf., e.g., *In re Supreme Court Advisory Comm. on Prof'l Ethics Opinion No. 697*, 911 A.2d 51, 59 (N.J. 2006) (noting that "vague[] and ambigu[ous]" provisions "are not appropriate as ethics standards"). As one court has noted, "[i]f attorneys' violations of ethical rules are to have implications for litigation, as well as their own disciplinary status, the standards against which their conduct is to be measured should be *consistent and clear*." *Miano v. AC & R Adver., Inc.*, 148 F.R.D. 68, 83 (S.D.N.Y. 1993) (emphasis added). Whether certain conduct "reflects on an attorney's fitness to practice law," *ante*, ¶ 12, is much more vague — and subject to a much wider array of inconsistent applications — than simply determining whether conduct "involv[es] dishonesty, fraud, deceit or misrepresentation," Rule 8.4(c). Rather than reading in something that is not in the rule itself and that only introduces vagueness, I would limit our interpretation of Rule 8.4(c) to its actual language, which is clear on its face.

---

[7] Although this problem of surplusage is arguably no longer a worry now that recent amendments to the Rules of Professional Conduct have deleted subsection (h), the majority correctly recognizes that those amendments are not applicable to the current proceedings before the Court. *Ante*, ¶ 5 n.2. Further, because there is no indication that the recent amendments were an attempt to clarify the original meaning of Rule 8.4, see *Washington v. Pierce*, 2005 VT 125, ¶ 33, 179 Vt. 318, 895 A.2d 173 (recognizing that later clarifications can be helpful in interpreting a statute), the recent amendments should not affect our interpretation of Rule 8.4, see *Ins. Co. of Pa. v. Johnson*, 2009 VT 92, ¶ 12, 186 Vt. 435, 987 A.2d 276 (citing *Coca Cola Bottling Co. of Northampton v. Comm'r of Revenue*, 473 N.E.2d 187, 189 n.3 (Mass. 1985), for the proposition that "[w]hat the . . . legislation involved in this case means cannot rationally be influenced by [subsequent] legislation"). If the recent amendments to Rule 8.4 have any significance on the present case, it is that in amending that rule we did not add any of the language that the majority now reads into Rule 8.4(c).

¶ 39. Although the majority cobbles together some support for the hearing panel's narrow construction of Rule 8.4(c), most of the existing authority goes the other way and suggests that Rule 8.4(c) is "broad and . . . encompasses conduct both within and outside the realm of the practice of law." ABA Ctr. for Prof'l Responsibility, Annotated Model Rules of Professional Conduct 583 (6th ed. 2007). The courts and advisory committees that have considered Rule 8.4(c) in contexts similar to this one have, in the main, concluded that Rule 8.4(c)'s prohibition — or identical provisions of other rules — on "conduct involving dishonesty, fraud, deceit or misrepresentation" prohibits attorneys from affirmatively misleading third parties as to whether a conversation is being recorded. See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422, 1201:101 (2001) ("A lawyer may not, however, . . . falsely represent that a conversation is not being recorded."); *Anderson v. Hale*, 159 F. Supp. 2d 1116, 1117 (N.D. Ill. 2001) (recording telephone calls without disclosing as much violates Local Rule 83.58.4(a)(4), which like Rule 8.4(c) prohibits "dishonesty, fraud, deceit or misrepresentations"); *People v. Wallin*, 621 P.2d 330, 331 (Colo. 1981) (recording conversation without permission of other party violates provision of Code of Professional Responsibility forbidding, like Rule 8.4(c), conduct involving dishonesty, fraud, deceit, or misrepresentation); *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215, 217 (Iowa 1996) (noting that it "is not the use of recording devices, but the employment of artifice or pretense, that truly poses a threat to the trust which is the bedrock of our professional relationships," and holding that surreptitious recording for purposes of future litigation against judge was "conduct involving dishonesty, fraud, deceit, or misrepresentation"); Prof'l Ethics Comm'n of the Me. Bd. of Overseers of the Bar, Op. 168 (1999) (Maine Bar Rule 3.2(f), which parallels Vermont's Rule 8.4(c), prohibits affirmative misrepresentations about recording, if not recording itself); State Bar of N.M. Ethics Advisory Comm., Formal Ethics Advisory Op. 2005-03 (2005) (provision identical to Rule 8.4(c) precludes "the secret recording of a witness interview by a lawyer . . . if such a recording would involve deceiving the witness either by commission or omission"); Okla. Bar Ass'n Ethics Op. 307 (1994) (noting that, although recording is not per se deceptive, Rule 8.4(c) requires that "if inquiry is made regarding tape recording, . . . the lawyer must be candid and truthful");

Or. State Bar, Formal Op. 2005-156 (lawyers may record conversations only if "substantive law does not prohibit a recording" and "in the absence of conduct that would affirmatively lead a person to believe that no recording would be made"); Prof'l Ethics Comm. for the State Bar of Tex., Op. 575 (2006) (same).

¶ 40. The majority is correct that the Supreme Court of Mississippi, in *Mississippi Bar v. Attorney ST*, 621 So. 2d 229, 233 (Miss. 1993), concluded that misrepresentations about the taping of a conversation with a witness violated Rule 4.1 but not Rule 8.4(c). In that case, however, the court engaged in no independent analysis of Rule 8.4(c) at all, even though the tribunal below had analyzed the conduct under Rule 8.4(c) and not Rule 4.1. No explanation is given in *Attorney ST* for the court's decision to find no violation of Rule 8.4(c), and the case, therefore, does not support a narrow reading of that rule merely because it omits any discussion of it. Similarly, the Minnesota Lawyers Professional Responsibility Board has stated, without consideration or independent analysis of Rule 8.4(c), that misrepresentations about the recording of conversations violate Rule 4.1. See K. Jorgensen, *Opinion Barring Secret Recording of Conversations is Repealed*, Minnesota Lawyer, June 3, 2002, available at http://www.courts.state.mn.us/lprb/fc02/fc060302.html. I do not believe that these and similar authorities are enough to support the hearing panel's narrow reading of Rule 8.4(c), particularly when contrasted with the plain language of the rule itself and all of the authority that go the other way. See *supra*, ¶ 39 and sources cited therein. Indeed, although the majority claims that a "considerable body of authority" supports its position, *ante*, ¶ 9, it is telling that the majority ultimately rests upon the "silence" of one court and one ethical opinion that state that certain actions violate Rule 4.1, but say nothing about whether those actions violate Rule 8.4(c). See *ante*, ¶16. This logic is untenable. Cf., e.g., *Rupard v. Astrue*, 627 F. Supp. 2d 590, 596 (E.D. Pa. 2009) (holding that when a judge "made no finding one way or the other," the judge's "silence cannot be interpreted as a determination" on that issue).

¶ 41. The majority also goes too far in its statement that a broad interpretation of Rule 8.4(c) would open the door to disciplinary proceedings based on "any untruth told to anyone for any purpose," *ante*, ¶ 14, even "giving a false reason for breaking a dinner engagement," *ante*, ¶ 12. As the majority itself notes, "the rules are 'rules of reason.' " *Ante*, ¶ 17 (quoting V.R.Pr.C.,

Scope). In addition, the rules specifically state that "whether or not discipline should be imposed . . . depend[s] on . . . the . . . seriousness of the violation." V.R.Pr.C., Scope. A broad interpretation of Rule 8.4(c), therefore, would not invite disciplinary proceedings based upon something as trivial as a lawyer's untruthful statement for missing a dinner engagement.

¶ 42. Although I conclude that respondents violated Rule 8.4(c) in addition to Rule 4.1, I agree with the majority that the sanction imposed by the panel remains appropriate here. See *ABA Standards for Imposing Lawyer Sanctions, in* ABA Compendium of Professional Responsibility Rules and Standards 421 (2008 ed.) ("The standards thus are not analogous to criminal determinate sentences, but are guidelines which give courts the flexibility to select the appropriate sanction in each particular case of lawyer misconduct."). My conclusion that the offending conduct violated two rules rather than one would not require the imposition of a more onerous sanction.

¶ 43. I am authorized to state that Justice Dooley joins in this concurrence and dissent.