COCA-COLA BOTTLING CORPORATION, APPELLANT AND APPELLEE,
*v.* LINDLEY, TAX COMMR., APPELLEE AND APPELLANT.

(Nos. 78-60 and 78-69—Decided November 22, 1978.)

100

*Messrs. Taft, Stettinius & Hollister, Mr. Stephen M. Nechemias* and *Mr. Donald C. Hess,* for appellant and appellee, Coca-Cola Bottling Corporation.

*Mr. William J. Brown,* attorney general, and *Mr. Charles M. Steines,* for appellee and appellant, Tax Commissioner.

## I.

*Per Curiam.*

The taxpayer contends in its appeal that the true value of returnable bottles and shells is their deposit or repurchase price, which was 2 cents, later raised to 5 cents, for bottles (10 cents for 32 oz. bottles) and 12 cents, later raised to 30 cents, for shells, during the years in question. Taxpayer argues further that the repurchase or deposit price represents the true value for these returnable goods because (1) it is a price determined in the market place which is necessary to induce the return of the bottles and cases, and (2) a returnable bottle, once filled with beverage, immediately depreciates in value.

The Tax Commissioner contends that the true value of returned bottles and shells is the original purchase price of the containers as determined from the arms-length transaction between the taxpayer-bottler and the manufacturers or suppliers of the containers—not the lower deposit price actually paid by the taxpayer.

The Board of Tax Appeals in its decision emphasizes the fact that the price paid by the taxpayer to repurchase the bottles and shells from customers constitutes a return of the price or deposit paid by the consumer and that the taxpayer sets that price unilaterally and, consequently, that it was not an arms-length transaction. The evidence presented at the hearing before the board, however, demonstrates that market factors play a significant role in the determination of the price which taxpayer must pay to repurchase used bottles and shells and of the quantity which it is able to purchase. For 1972, for example, taxpayer raised its price (for return of bottles) from 2 cents to 5 cents in order to be able to repurchase more of those bottles including those bottles in which, from an accounting standpoint, 2 cents had been included in the sale price to the retailer. The evidence shows that there is no direct correlation between the number of bottles the taxpayer sells

and the number it repurchases. Bottles frequently cross franchise boundaries, and, as a result, taxpayer sells bottles that it will never repurchase, and it repurchases bottles which it did not sell. In addition, some bottles are discarded, others are broken and are used for a variety of purposes; never being offered for resale to the taxpayer.

The taxpayer further presented evidence demonstrating that a new bottle depreciates substantially once it is filled with beverage and that the value of a used bottle is less than the value of a new bottle. Used bottles returning from the trade must be sorted, culled and sanitized before they may be reused, resulting in increased costs to the bottler. In addition, there is significantly increased risk of breakage on the bottling line when used bottles are filled.

In addition, this court held, *inter alia*, in *Red Top Brewing Co.* v. *Bowers* (1955), 163 Ohio St. 18, that the deposit price paid by a taxpayer for return of bottles is a proper figure for listing such personal property, and a determination by the commissioner or board that such property should be listed at a higher figure is unreasonable. Therefore, the decision of the board with respect to the true value of taxpayer's returnable bottles and shells for personal property tax purposes is unreasonable and unlawful and it is reversed.

## II.

The Tax Commissioner maintains in his appeal that the taxpayer has retained such control over the returnable bottles and cases sold to retail customers so as to be obligated to list them for personal property tax purposes.

The board made a factual determination that the taxpayer did not have " 'ownership or control' " of the bottles and shells "in the field."

As found by the board, "[f]rom the testimony presented at the hearing, the customers are under no duty to return the bottles to the appellant, nor can the appellant compel them to do so. The sale of the beverage in bottles and cases to the appellant's customers is considered a sale of the container as well. The taxpayer sells the beverage to its customer and at that time also relinquishes all possession

and any possibility of control over the containers to the customer who purchases the beverage and the containers. That ownership of the containers is with the customer is manifested by the fact that the taxpayer cannot compel the return of the bottles and shells, and that the customer may dispose of these containers as he wishes. The deposit paid by the beverage customer to the taxpayer and later given back to the customer if the bottle is returned does not create a legal obligation on the customer to return the bottle for the deposit price. The possibility of the customer's receiving the deposit price is only an inducement to persuade the customer to return the containers to the bottler-taxpayer rather than throw them away." The board concluded that the taxpayer is the owner of the bottles and shells inside its warehouse, but not the floating bottles and shells which are outside the warehouse.

The board's decision is also supported by other jurisdictions; e. g., *Coca-Cola Bottling Works Co.* v. *Kentucky Dept. of Revenue* (Ky. App., 1974), 517 S. W. 2d 746; *Nehi Bottling Co.* v. *Gallman* (1972), 39 A. D. 2d 256, 333 N. Y. S. 2d 824; *Goebel Brewing Co.* v. *Brown* (1943), 306 Mich. 222, 10 N. W. 2d 835.

The decision of the board determining that the taxpayer does not own or control bottles and shells "in the field" for purposes of the personal property tax is reasonable and lawful, and it is affirmed.

Accordingly, the decision of the board is affirmed in part and reversed in part.

*Decision affirmed in part and reversed in part.*

LEACH, C. J., HERBERT, CELEBREZZE, W. BROWN and SWEENEY, JJ., concur.

P. BROWN and LOCHER, JJ., dissent.

LOCHER, J., dissenting.

### I.

I am unable to agree with the judgment of this court that the board's decision, finding that taxpayer was not required to list the bottles and shells "in the field" in its per-

sonal property tax return, is lawful and reasonable. R. C. 5711.03 sets forth the property which taxpayer is required to list in its tax return, in relevant part, as follows:

"Except as provided in sections 5711.01 to 5711.36 of the Revised Code, all taxable property shall be listed as to *ownership or control*, valuation, and taxing districts as of the beginning of the first day of January, annually * * *." (Emphasis added.)

Personal property used in business is to be listed if it is subject to either (1) the "ownership" of the taxpayer or (2) the "control" of the taxpayer. Neither term is defined by statute. Accordingly, the accepted legal meaning applies. R. C. 1.42. "Ownership" is defined as follows:

"Collection of rights to use and enjoy property, including the right to transmit it to others. * * * The complete dominion, title, or property right in a thing or claim. * * * The entirety of the power of use and disposal allowed by law." Black's Law Dictionary (Rev. 4 Ed.).

"Control" has been held to mean the exercise of a restraining or directing influence over; to dominate; regulate. *Trust Co. of New Jersey* v. *Greenwood Cemetery* (1943), 21 N. J. Misc. 169, 32 A. 2d 519; *Board of Ins. Commrs.* v. *Duncan* (Tex. Civ. App., 1943), 174 S. W. 2d 326; *Merchant's Motor Freight* v. *State Highway Com.* (1948), 239 Iowa 888, 32 N. W. 2d 773. Clearly, the two terms are not synonymous. Control is an incident of legal ownership, but ownership is not always dispositive of control.

The board's decision ignored the incluson of both "ownership" and "control" in R. C. 5711.03. A perusal of its entry discloses that the basis for its decision was a finding that the taxpayer did not own the bottles and shells "in the field." The board found that the taxpayer sells the bottles and shells to its customers. Relying upon the facts that the taxpayer can not legally compel the return of the bottles and that the customers may dispose of them as they will, the board concluded that "ownership" was in the customer. The preceding facts, while *indicia* of "ownership,'" are not deter-

---

[1]The board erroneously prohibited an attempt by the Tax Commissioner to rebut taxpayer's evidence as to the ownership of the bottles

minative of the issue of "control," also present under R. C. 5711.03.

Even assuming that title to the bottles and shells "in the field" did transfer to taxpayer's customers,[2] this transaction is clearly not a "sale" in the ordinary sense where customers buy for their own purposes. The utilization of a deposit fee that is less than taxpayer's actual cost for the bottles and shells signifies that the taxpayer is not in the business of selling the bottles and shells, but merely using them to market its product. Similarly, this "cost-deposit" disparity indicates that taxpayer's customers are not in the market of buying bottles and shells, but simply their fluid content. Although the taxpayer, because of this amorphic transaction, may thus claim not to possess legal title, the repository of control has yet to be determined.

An empirical investigation yields the conclusion that control ostensibly resides with the taxpayer. The taxpayer's control is directed towards insuring the return of the bottles and shells "in the field." The bottles used by the taxpayer are clearly limited in function by their distinctive shape and the trademark. Their configuration restrains their usage, and their optimum utilization, a container for soft drinks, is restricted by the trademark. To complete its control over the bottles and shells, the taxpayer has instituted a deposit policy. This policy creates a monetary inducement for the return of the bottles and shells. The deposit thus serves as a directing influence upon the customers to return the bottles and shells, which are rendered in all practicality worthless to the consumer by taxpayer's restraining influence. "Control," which was previously de-

---

"in the field," which sought to inquire as to taxpayer's treatment of the original purchase of the bottles for federal tax purposes and its treatment of the deposit for the state franchise tax. This issue, although raised by the Tax Commissioner, has not been addressed in the majority opinion.

[2]Ownership of the bottles and shells "in the field" has not always been viewed by the bottler as residing with the customer. *Coca-Cola Bottling Co. of Baltimore* v. *United States* (Ct. of Claims, 1973), 487 F. 2d 528; *Red Top Brewing Co.* v. *Bowers* (1953), 163 Ohio St. 18.

fined as "the exercise of a restraining or directing influence over," is within the taxpayer and not the consumer.

The board's decision extirpated the word "control" from R. C. 5711.03 and transported personal property taxation into the "never-never land" of legal hypertechnicality. The General Assembly's mandate of reality in the imposition of the personal property tax upon the basis of either "ownership" or "control" is eminently logical. In the present cause, the taxpayer alone may utilize these containers for their designed function, *i. e.*, the marketing of soft drinks; the taxpayer's operation is dependent upon the return of these items, and the taxpayer directs their return by a policy of monetary inducement. I am, therefore, of the opinion that the bottles and shells "in the field" are controlled by the taxpayer and, in accordance with R. C. 5711.-03, are to be listed in taxpayer's return.

*II.*

As to the valuation issue, I also am in discord with the majority's judgment. The applicability of *Red Top Brewing Co.* v. *Bowers* (1953), 163 Ohio St. 18, is questionable. The facts of *Red Top Brewing, supra,* do not reveal that the taxpayer had imposed similar restraining influences, *i. e.,* a unique shape and a trademark, upon its bottles which negated their economic value in the hands of the customers. It is axiomatic that *Red Top Brewing, supra,* can not now be viewed as controlling upon an issue not present.

Moreover, in light of the anomalous nature of this alleged sale of the bottles and shells to the customers, the deposit should not be viewed as the best method of determining value. *Cf. Grabler Mfg. Co.* v. *Kosydar* (1975), 43 Ohio St. 2d 75.

Accordingly, I respectfully dissent.

P. BROWN, J., concurs in the foregoing dissenting opinion.