## Coca Cola Bottling Company of Northampton *vs.* Commissioner of Revenue.

Suffolk.  November 5, 1984. — January 22, 1985.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & Lynch, JJ.

*Taxation,* Sales tax, Use tax. *Beverage Containers. Words,* "Sale at retail."

A soft drink bottling company was liable for use tax on sales to it of returnable
    drink containers by out-of-State manufacturers, where such sales occur-
    red prior to the enactment of the exemption contained in St. 1981, c.
    571, § 1. [727-730]

Appeal from a decision of the Appellate Tax Board.

*Bartholomew P. Molloy (Norma J. Brettell* with him) for
the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for the
Commissioner of Revenue.

Wilkins, J. Coca Cola Bottling Company of Northampton
(Coca Cola) bottles Coca Cola products at its plant in North-
ampton and sells those products to its dealers. It purchases
returnable bottles, returnable cartons, and returnable shells[1]
from out-of-State manufacturers. At issue is the question
whether, for the period from June, 1972, through March, 1978,
Coca Cola is liable for use taxes on the sales to it of returnable
containers. The Appellate Tax Board (board) rejected Coca
Cola's challenge to the refusal by the Commissioner of Revenue
to abate use taxes assessed against it. Coca Cola has appealed
the board's decision. We affirm.

Coca Cola uses a deposit system in selling returnable bottles,
cartons, and shells to its dealers. Dealers in turn usually charge
a deposit to their customers for the returnable containers. Cus-
tomers may return containers to a dealer and receive a refund

---

[1] A shell is used to carry returnable bottles in the same way as a carton.

of their deposits. A dealer may return bottles, cartons, and shells to Coca Cola and receive a credit in the amount of the applicable deposit. The returned containers are reused unless they are defective. The average life of a returnable bottle is approximately one year, involving eight return trips. Coca Cola reflects the frequency of return of bottles in its selling price for soft drinks.[2]

"The sales tax, G. L. c. 64H, and the use tax, G. L. c. 64I, are designed to be complementary." *Boston Tow Boat Co.* v. *State Tax Comm'n,* 366 Mass. 474, 476 (1974). Sales exempt from taxation under the sales tax statute are exempt under the use tax statute. G. L. c. 64I, § 7 (*b*). In general, an excise is imposed only on a sale at retail.

Coca Cola argues that out-of-State vendors' sales to it of returnable containers are exempt from the use tax because such a sale is not a sale at retail. The definition of a "sale at retail," set forth in G. L. c. 64H, § 1 (13), inserted by St. 1967, c. 757, § 1, and incorporated into the use tax statute (G. L. c. 64I, § 1 [1]), is "a sale of tangible personal property for any purpose other than resale in the regular course of business." Coca Cola contends that it purchases returnable containers for the purpose of resale in the regular course of business, that a sales tax is imposed only on sales at retail (G. L. c. 64H, § 2), and that therefore such transactions are exempt from the use tax. For the purposes of this case we accept the fact that a bottler sells the filled, returnable containers to retailers and they in turn sell the containers to consumers. See *Commonwealth* v. *Brandon Farms Milk Co.,* 249 Mass. 531, 533-534 (1924); G. L. c. 64H, § 1 (12) (*a*), and G. L. c. 64I, § 1 (1). See also *Hadley* v. *Hillcrest Dairy, Inc.,* 341 Mass. 624, 626-627 (1961); *Mead* v. *Coca Cola Bottling Co.,* 329 Mass. 440, 443 (1952).

When a similar sales or use tax issue has arisen elsewhere in generally analogous factual circumstances, a majority of courts, considering statutes not identical to ours, have con-

---

[2] The board did not make any finding whether deposits required of dealers are less than the original cost to Coca Cola of returnable bottles and other containers, but that fact seems to be implied in the board's findings and is supported by testimony from a Coca Cola employee at the board's hearing.

cluded that the bottlers' purchases were exempt from a sales or use tax because the purchases were made for resale. See, e.g., *Belleville Dr. Pepper* v. *Korshak,* 36 Ill. 2d 352 (1966); *Indiana Dep't of State Revenue* v. *Associated Beverage Co.,* 170 Ind. App. 467 (1976); *Coca-Cola Bottling Works Co.* v. *Kentucky Dep't of Revenue,* 517 S.W.2d 746 (Ky. 1974); *Goebel Brewing Co.* v. *State Bd. of Tax Admin.,* 306 Mich. 222 (1943); *Smith Beverage Co.* v. *Reiss,* 568 S.W.2d 61 (Mo. 1978); *Nehi Bottling Co.* v. *Gallman,* 39 A.D.2d 256 (1972), aff'd, 34 N.Y.2d 808 (1974). Cf. *Coca-Cola Bottling Corp.* v. *Lindley,* 56 Ohio St. 2d 99 (1978) (property tax question); *Canada Dry Bottling Co.* v. *Fahs,* 109 F. Supp. 187 (S.D. Fla. 1952) (income tax question).

There is a contrary line of cases dealing with analogous circumstances, but again under statutory provisions different from the relevant Massachusetts statutes. See, e.g., *Arkansas Beverage Co.* v. *Heath,* 257 Ark. 991 (1975); *Gay* v. *Canada Dry Bottling Co.,* 59 So. 2d 788 (Fla. 1952); *Pepsi Cola Bottling Co.* v. *Peters,* 189 Neb. 271 (1972); *Red Fox Gingerale Co.* v. *Langton,* 100 R.I. 531 (1966); *District of Columbia* v. *Seven-Up Wash., Inc.,* 214 F.2d 197 (D.C. Cir.), cert. denied, 347 U.S. 989 (1954). This line of cases, best exemplified by the District of Columbia opinion, presents a method of analysis that our definition of sale at retail might require. The approach is in part factual. Bottlers "are not in the business of selling bottles or cases but of using them as a means of marketing their soft drinks." *Id.* at 200. "[B]ecause the charge or deposit required for the containers is less than their cost, the true purpose of their purchase is apparent. It is to use and reuse them." *Id.* In the District of Columbia the applicable statute excluded a sale in which the purpose of the purchaser was to resell the property so transferred. *Id.* at 199 n.9. The court concluded that "[t]he true purpose here is not to resell but to use, even if this use is made possible in part through the form of resale and repurchase." *Id.* at 201.

A case can be made for similarly construing G. L. c. 64H, § 1 (13) (which defines "sale at retail" as a sale of tangible personal

property for any purpose "other than resale"), as not exempting the sales involved in the case before us. Perhaps the Massachusetts definition recognizes the possibility of more than one purpose of a purchase, such as in this case both resale and subsequent use on repurchase by Coca Cola. If so, then the sales here would be sales at retail because there was a purpose to the purchase other than resale. Under this view, to be entitled to exemption the sole purpose of the purchase must be resale.

On the other hand, the definition of sale at retail may call for a determination of the dominant purpose of the particular purchase. Questions concerning the exemption of sales for resale may require an analysis of the inherent nature of a particular business. See *Clark Franklin Press Corp.* v. *State Tax Comm'n,* 364 Mass. 598, 602 (1974). The concept is not new that a buyer's basic purpose may be significant in determining the applicability of an exemption from a sales or use tax. See *Greenfield Town Crier, Inc.* v. *Commissioner of Revenue,* 385 Mass. 692, 695-696 (1982); *Houghton Mifflin Co.* v. *State Tax Comm'n,* 373 Mass. 772, 774 (1977). If a bottler is freely and voluntarily selling returnable containers at less than cost, there seems to be a purpose to the purchase of containers other than their resale and that purpose might fairly be regarded as dominant.

Certainly, from what we have said, the proper application of the sale at retail "exemption" is not certain in this case. In seeking some guide in resolving the issue before us, it is appropriate to see what the Legislature may have done in other parts of the sales and use tax statutes. We find in G. L. c. 64H, § 6 (*q*), as did the board, a controlling instruction as to the intention of the Legislature. Section 6 (*q*) of G. L. c. 64H,[3] in effect ex-

---

[3] General Laws c. 64H, § 6 (*q*), inserted by St. 1967, c. 757, § 1, and applicable during the years involved in this case, provides an exemption for the following: "(1) Sales of nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container; (2) containers when sold with the contents if the sale price of the contents is not required to be included in the measure of the taxes imposed by this chapter; (3) returnable containers when sold with the contents in connection with a retail sale of the contents or when resold for refilling. As used in this paragraph the term 'returnable

empts from the sales tax sales of *nonreturnable* containers sold to bottlers. See clause (1). The focus on an exemption for sales of *nonreturnable* containers to the exclusion of *returnable* containers seems significant. The further provision for an exemption for *returnable* containers when sold with the contents at retail or when resold for refilling (see clause [3]) implies that no exemption for *returnable* containers was intended in other circumstances. It would have been an easy matter for the Legislature to have exempted all sales of returnable containers if that had been its original intention.

We conclude that sales of returnable containers to bottlers were not exempt from the use (or sales) tax as it existed during the period relevant to this case. See Dane, The New Sales and Use Tax Law, 51 Mass. L.Q. 239, 257 (1966) ("There being no applicable exemption, a tax is imposed on sales of returnable containers without the contents to persons such as soft drink bottlers who place the contents in the container and sell the contents to the ultimate consumer").

*Decision of the Appellate Tax
Board affirmed.*

---

containers' means containers of a kind customarily returned by the buyer of the contents for reuse. All other containers are 'nonreturnable' containers. Nothing in this paragraph shall be construed so as to tax the sale of bags in which feed for livestock and poultry is customarily contained."

Section 6 (*q*) was amended by St. 1981, c. 571, § 1, to add words to clause (1) so that it now refers to "[s]ales of both returnable and nonreturnable containers." It seems clear that sales of the type involved in this case are now exempt from the sales and use tax. We do not regard the 1981 amendment as having any significant bearing on the construction of § 6 (*q*) before its amendment. What the 1967 legislation involved in this case means cannot rationally be influenced by 1981 legislation. The latter change could be either a clarification of the prior law (as Coca Cola claims) or a change in the prior law (as the Commissioner of Revenue claims). In any event, the 1981 legislation can fairly have no application in the resolution of this case.