2009 VT 115



In re PRB Docket No. 2007-046 and
In re PRB Docket No. 2007-047 (2008-214 & 2008-215)

 

2009 VT 115

 

[Filed 25-Nov-2009]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont05609-0801 of any errors in order
that corrections may be made before this opinion goes to press.

 

 


 2009 VT 115
 
  


 Nos. 2008-214 & 2008-215
 
  


 In re PRB Docket No. 2007-046
 
 
 Supreme Court
 
 
  
 
 
  
 
 
     and
  
 In re PRB Docket No. 2007-047
 
 
 Original Jurisdiction
  
 March Term, 2009
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Richard
 H. Wadhams, Chair; Eric Johnson, Esq.; Lisa Ventriss
 
 
  
 
 Beth DeBernardi, Deputy Disciplinary Counsel, Burlington,
for Petitioner.

 

Robert K. Reis of Reis, Urso, Ewald & Anderson, PLLC,
Rutland, for Respondents.

 

William H. Sorrell, Attorney General, Michael O. Duane and
John H. Treadwell,

  Assistant Attorneys General, and Jane Woodruff,
Executive Director, State’s Attorneys’

  and Sheriffs’ Department, Montpelier, for Amicus
Curiae Office of the Vermont

  Attorney General.

 

Matthew F. Valerio, Defender General, Anna Saxman, Deputy
Defender General, and

  Renee Mobbs, Law Clerk (On the Brief), Montpelier,
for Amicus Curiae Office of the

  Defender General. 

 

Paul Van De Graaf, Acting United States Attorney, Carol L.
Shea, William B. Darrow

  and Timothy B. Tomasi, Assistant U.S. Attorneys,
Burlington, and David Margolis,

  Acting Deputy Attorney General, and Douglas N. Letter
and Lowell V. Sturgill, Jr.,

  Attorneys Civil Division, Washington, D.C., for
Amicus Curiae United States of

  America.

 

 

PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund and
Burgess, JJ.

 

 

¶ 1.            
SKOGLUND, J.  We ordered review of these attorney-discipline
cases to consider the application of the Vermont Rules of Professional Conduct
to two attorneys who misled a potential witness about whether they were
recording a telephone conversation.  A hearing panel of the Professional
Responsibility Board determined that the attorneys had violated Rule 4.1—which
provides that “[i]n the course of representing a client a lawyer shall not
knowingly make a false statement of material fact or law to a third person”—but
had not violated Rule 8.4(c)—which establishes that it is professional
misconduct for a lawyer to “engage in conduct involving dishonesty, fraud,
deceit or misrepresentation.”  On review, the Office of Disciplinary
Counsel argued that the hearing panel’s conclusion on Rule 4.1 was well
founded, but that it had erred in concluding that the attorneys had not
violated Rule 8.4(c).  We affirm the hearing panel’s decision and find
that a private admonition is the appropriate sanction for the offending
conduct.

¶ 2.            
The parties stipulated to the following facts.  Respondent
attorneys were partners in a law practice and represented a client in a serious
criminal matter.  During trial, a potential witness contacted them,
claiming to have information that tended to show their client’s
innocence.  Respondents obtained a continuance until the following day to
ascertain the witness’s potential testimony.  They quickly arranged to
interview the witness by telephone and to record the call.  During the
call, the witness asked respondents whether they were recording the
interview.  One respondent said “No,” and the other, attempting to
distract the witness, added “She’s on speaker phone, so I can hear you.” 
The witness later filed complaints with the Office of Disciplinary Counsel
against both respondents.  The parties jointly recommended that the
hearing panel conclude that respondents had violated Rules 4.1 and
8.4(c).  The disciplinary charges were premised at all times solely on the
act of misleading the witness about the recording, and not on the recording
itself.  

¶ 3.            
The hearing panel first recounted the history of professional
disciplinary consequences for attorneys who surreptitiously record
conversations, noting that the American Bar Association issued a formal opinion
in 1974 concluding that attorneys—except prosecutors—should not record any
conversation without obtaining consent from all parties to the
conversation.  ABA Comm. on Ethics and Prof’l Responsibility, Formal Op.
337 (1974). Many state bar association ethics committees followed the ABA
recommendation in their own advisory opinions, with some variation as to the
scope of the prosecutorial exception; in some states, the exception was
extended, as a matter of fairness, to defense attorneys.  See, e.g., State
Bar of Ariz. Comm. on the Rules of Prof’l Conduct, Op. 90-02 (1990).  The
ABA recommendation was premised on the duty of candor embodied in the
since-superseded provisions of the ABA Code of Professional Conduct. 
Several state bar committees, however, declined to follow the ABA’s formal
opinion, concluding that surreptitious recording itself did not necessarily
violate the conduct rules in those states, and that surreptitious recording,
absent some other prohibited act, would not be a basis for discipline.

¶ 4.            
In 2001, the ABA formally revoked the 1974 opinion, replacing it with an
opinion stating that mere surreptitious recording in states—like Vermont—where
such recording is otherwise lawful, is not inherently deceitful and thus
may be ethically permissible.  ABA Comm. on Ethics and Prof’l
Responsibility, Formal Op. 01-422 (2001).  The opinion included a
prohibition on nonconsensual recording “only where it is accompanied by other
circumstances that make it unethical.”  Id. at 1201:103.  One
such circumstance, the opinion went on to hold, was falsely denying that a
conversation is being recorded.  Id.
at 1201:104.[1] 
“That a lawyer may record a conversation with another person without that
person’s knowledge and consent does not mean that a lawyer may state falsely
that the conversation is not being recorded.”  Id.  Put
another way, the opinion held that a “lawyer may not . . . falsely represent
that a conversation is not being recorded.”  Id. at 1201:101. 
The opinion noted that such false representations would “likely violate Model
Rule 4.1, which prohibits a lawyer from making a false statement of material
fact to a third person.”  Id. at 1201:104.  And although the
word “likely” might suggest equivocation, the ABA committee went on to
conclude, without reservation, that a “lawyer who records a conversation
without the consent of a party to that conversation may not represent that
the conversation is not being recorded.”  Id. at 1201:106
(emphasis added).

¶ 5.            
As noted above, the hearing panel in the instant appeal found that
respondents had violated Rule 4.1, but not Rule 8.4(c), and that a private
admonition was the appropriate sanction.  Now, on review, we consider each
rule in turn.[2]

I. 
Rule 4.1

¶ 6.            
Rule 4.1 provides that “[i]n the course of representing a client a
lawyer shall not knowingly make a false statement of material fact or law to a
third person.”  As the hearing panel noted, the rule requires not only
that the attorney’s statement be false, but that the falsity concern a material
fact.  Here, the hearing panel found that the misrepresented fact—whether
the call was being recorded—was material to the witness.  Respondents
believed that the witness would have terminated the call if he had found out
that he was being taped.  We agree, on the record before us, that the
recording of the call was a material fact.

¶ 7.            
We also agree that respondents knowingly made a false statement about
the recording and thus violated Rule 4.1.  One respondent stated in plain
terms that she was not recording the conversation, when in fact she was. 
The second respondent attempted to distract the witness from the issue of
recording entirely, by making a statement about the speakerphone. 
Furthermore, she did not disagree with or correct the misrepresentation made by
the first respondent.  Both respondents’ actions, therefore, violate Rule
4.1.  See V.R.Pr.C. 4.1 cmt. (“A misrepresentation can occur if the lawyer
incorporates or affirms a statement of another person that the lawyer knows is
false.  Misrepresentations can also occur by failure to act.”); see also Miss.
Bar v. Att’y ST, 621 So. 2d 229, 233 (Miss. 1993) (“We find, however, that
Attorney ST stepped over the line . . . when he blatantly denied, when asked,
that he was taping the conversations.  Rule 4.1 expressly states that ‘[a]
lawyer is required to be truthful when dealing with others on a client’s
behalf.’ “).

¶ 8.            
As the hearing panel took pains to make clear, the charges here are
based entirely on these false statements, and not on the mere surreptitious
recording itself, which was lawful.  We therefore express no opinion today
on the distinct question of whether surreptitious recording, without an
additional unethical act such as lying, would violate Rule 4.1.

II.
 Rule 8.4(c)

¶ 9.            
Respondents were additionally charged with violating Rule 8.4(c), which
prohibits a member of the Bar from “engag[ing] in conduct involving dishonesty,
fraud, deceit or misrepresentation.”  Although the hearing panel dismissed
these charges based on its own recent cases finding violations of 8.4(c), the
text and construction of the rule persuade us that the rule was meant to reach
only conduct that calls into question an attorney’s fitness to practice
law.  We reach this conclusion by studying the rule’s immediate context
and its function alongside Rule 4.1, and by reviewing a considerable body
of authority.  

¶ 10.        
An examination of the entire text of Rule 8.4 provides necessary context
for interpreting subsection (c).  Rule 8.4 provides as follows:

  It is
professional misconduct for a lawyer to:

 

  (a) violate
or attempt to violate the Rules of Professional Conduct, knowingly assist or
induce another to do so, or do so through the acts of another;

  

  (b) engage
in a ‘serious crime,’ defined as illegal conduct involving any felony or
involving any lesser crime a necessary element of which involves interference
with the administration of justice, false swearing, intentional
misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft,
or an attempt or a conspiracy or solicitation of another to commit a ‘serious
crime’;

 

  (c) engage
in conduct involving dishonesty, fraud, deceit or misrepresentation;

 

  (d) engage
in conduct that is prejudicial to the administration of justice;

 

  (e) state or
imply an ability to influence improperly a government agency or official;

 

  (f)
knowingly assist a judge or judicial officer in conduct that is a violation of
applicable rules of judicial conduct or other law;

 

  (g)
discriminate against any individual because of his or her race, color,
religion, ancestry, national origin, sex, sexual orientation, place of birth or
age, or against a qualified handicapped individual, in hiring, promoting or
otherwise determining the conditions of employment of that individual; or

 

  (h) engage
in any other conduct which adversely reflects on the lawyer’s fitness to
practice law.

 

V.R.Pr.C. 8.4.

 

¶ 11.        
The subsections in the rule draw a distinction between two types of prohibited
behavior.  Some subsections are quite specific as to the behavior
proscribed, while others prohibit general categories of behavior. 
Subsections (a), (b), (e), (g), and, arguably, (f) proscribe behavior with
specificity: subsection (a) proscribes violation or attempted violation of the
rules; subsection (b) prohibits engaging in serious crimes—a term which is then
exhaustively defined;  subsection (e) proscribes stating or implying the
ability to improperly influence a government official; subsection (g) prohibits
discrimination on enumerated bases in enumerated contexts; and subsection (f)
proscribes knowingly assisting a judge in violating the standards governing her
behavior.  On the other hand, subsections (c), (d), and (h) prohibit engagement
in a broad range of “conduct,” defined as: “conduct involving dishonesty,
fraud, deceit or misrepresentation,” (c), “conduct that is prejudicial to the
administration of justice,” (d), and “other conduct which adversely reflects on
the lawyer’s fitness to practice law,” (h).

¶ 12.        
Reading the subsections in the context of one another, subsection (h) is
meant to capture other conduct similar to that described in the preceding
subsections and to specifically define such conduct as that which reflects
adversely on fitness to practice law.  See generally 2A N. Singer
& J. Shambie Singer, Statutes and Statutory Construction § 47:16, at 347-57
(7th ed. 2007).  Thus, while Rule 8.4(c) is “broad and . . . encompasses
conduct both within and outside the realm of the practice of law,”  ABA
Ctr. for Prof’l Responsibility, Annotated Model Rules of Prof’l Conduct 583
(6th ed. 2007), we are not prepared to believe that any dishonesty, such
as giving a false reason for breaking a dinner engagement, would be actionable
under the rules.  Rather, Rule 8.4(c) prohibits conduct “involving
dishonesty, fraud, deceit or misrepresentation” that reflects on an attorney’s
fitness to practice law, whether that conduct occurs in an attorney’s personal
or professional life.  V.R.Pr.C. 8.4(c).  This affirms the hearing
panel’s conclusion that subsection (c) applies only “to conduct so egregious
that it indicates that the lawyer charged lacks the moral character to practice
law.”

¶ 13.        
Further support for this result is found in the comment to the rule.
 The comment repeatedly stresses the importance of holding attorneys
accountable for only those behaviors that reflect poorly on their fitness to
practice.  The comment begins: “Many kinds of illegal conduct reflect
adversely on fitness to practice law, such as . . . the offense of willful
failure to file an income tax return.  However, some kinds of offenses
carry no such implication.”  It continues: “Although a lawyer is personally
answerable to the entire criminal law, a lawyer should be professionally
answerable only for offenses that indicate lack of those characteristics
relevant to law practice.”  V.R.Pr.C. 8.4 cmt. (emphasis added).  The
comment goes on to note that “[a] pattern of repeated offenses, even ones of
minor significance when considered separately, can indicate indifference to
legal obligation.”  Id. 

¶ 14.        
Our narrow interpretation of Rule 8.4(c) ensures that Rule 4.1 is not
reduced to mere surplusage.  A fundamental principle of construction
assumes that the drafters intended no redundancy.  See Fletcher Hill,
Inc. v. Crosbie, 2005 VT 1, ¶ 17, 178 Vt. 77, 872 A.2d 292 (“[W]e presume
that legislative language is inserted advisedly and not intended to create
surplusage.” (quotation omitted)); Robes v. Town of Hartford, 161 Vt.
187, 193, 636 A.2d 342, 346-47 (1993) (declining to interpret portions of a
statute as redundant).  Rule 4.1 provides that “[i]n the course of
representing a client a lawyer shall not knowingly make a false statement of
material fact or law to a third person.”  V.R.Pr.C. 4.1.  A broader
interpretation of Rule 8.4 would result in all behavior that violates Rule 4.1
running afoul of Rule 8.4(c) as well, since Rule 8.4(c) could conceivably
apply to any untruth told to anyone for any purpose.  Admittedly, some
false statements made to third persons during the course of representation
could also reflect adversely on a lawyer’s fitness to practice, thus violating
both rules.  However, not all misrepresentations made by an attorney raise
questions about her moral character, calling into question her fitness to
practice law.  If Rule 8.4 is interpreted to automatically prohibit
“misrepresentations” in all circumstances, Rule 4.1 would be entirely superfluous. 
There must be some meaning for Rule 8.4(c) independent of Rule 4.1—for we
presume that the drafters meant every rule to have some meaning. 
See Judicial Watch, Inc. v. State, 2005 VT 108, ¶ 14, 179 Vt. 214, 892
A.2d 191 (rejecting interpretation of statute as creating a superfluous
category); State v. Ben-Mont Corp., 163 Vt. 53, 57, 652 A.2d 1004, 1007
(1994) (“In determining the legislative intent, we may review the entire
statutory scheme.  Our interpretation must further fair, rational
results.” (citation omitted)).

¶ 15.        
Reading Rule 8.4 as applying only to misrepresentations that reflect
adversely on a lawyer’s fitness to practice law is additionally supported by
authority from other jurisdictions.  Sister courts have acknowledged that
Rule 8.4(c) cannot reasonably be applied literally—and with the same reasoning
we have employed.  See, e.g., Apple Corps Ltd. v. Int’l Collectors
Soc’y, 15 F. Supp. 2d 456, 475-76 (1998) (rejecting “the literal
application” of 8.4(c) on the grounds that it renders Rule 4.1 “superfluous”);
see also D.C. Bar Legal Ethics Comm. Op. 323 (2004) (“Clearly [Rule 8.4(c)]
does not encompass all acts of deceit—for example, a lawyer is not to be
disciplined professionally for committing adultery, or lying about the lawyer’s
availability for a social engagement.”).  Jurisdictions have also chosen
to expressly limit the scope of their versions of Rule 8.4 to “conduct which
indicates that an attorney lacks the character required for bar membership,” id.,
or “conduct of so grave a character as to call into question the lawyer’s
fitness to practice law,” Utah State Bar Ethics Advisory Op. Comm., Op. 02-05,
¶ 4 (2002) (quotation omitted), on the basis of the comments accompanying the
rule.  See also D. Isbell & L. Salvi, Ethical Responsibility of
Lawyers for Deception by Undercover Investigators and Discrimination Testers:
an Analysis of the Provisions Prohibiting Misrepresentation under the Model
Rules of Professional Conduct, 8 Geo. J. Legal Ethics 791, 816-18 (1995)
(advocating a narrow construction of the rule for all the aforementioned
reasons).  

¶ 16.        
Finally, in Attorney ST, the Supreme Court of Mississippi
concluded that an attorney’s misrepresentation about the taping of a
conversation with a witness violated Rule 4.1 but not 8.4(c).  621 So. 2d
at 233.  In addition, the ABA Committee on Ethics and Professional
Responsibility has recently issued a formal opinion on whether electronically
recording a conversation without knowledge of the parties violates Model Rule
8.4(c).  ABA Comm. on Ethics and Prof’l Responsibility, Formal Op. 01-422
(2001).  The Committee concluded that recording conversations in this
manner does not necessarily violate Model Rule 8.4(c), but added the following
limitation, citing Attorney ST:

  That a
lawyer may record a conversation with another person without that person’s
knowledge and consent does not mean that a lawyer may state falsely that the
conversation is not being recorded.  To do so would likely violate Model
Rule 4.1, which prohibits a lawyer from making a false statement of material
fact to a third person.

 

Id. at 1201:104.  The
Committee’s note of caution regarding the ramifications of falsely denying that
a conversation is being recorded is limited to Rule 4.1, even though the broader
context of the opinion concerns Rule 8.4(c).  If the Committee or the
court in Attorney ST had concluded that the same behavior violated Rule
8.4(c), it had every opportunity and reason to say as much.  Their silence
indicates that they did not believe the scope of Rule 8.4(c) reached this far
and we, likewise, refuse to so extend it.

¶ 17.        
In the course of zealously representing a client who was the defendant
in a serious criminal matter, the respondents in this case engaged in an
isolated instance of deception.  All indications are that respondents
earnestly believed that their actions were necessary and proper.  Indeed,
the panel found that respondents violated the rules out of a “determination to
defend their client against serious criminal charges,” and nothing else. 
Under such circumstances, respondents’ actions simply do not reflect adversely
on their fitness to practice.  The rules acknowledge that “conflicting
responsibilities are encountered” in the practice of law, and that “difficult
ethical problems arise from conflict between a lawyer’s responsibilities to
clients . . . and to the lawyer’s own interest in remaining
an upright person.”  V.R.Pr.C., Preamble.  Nevertheless, the rules
are “rules of reason,” and should be applied “in recognition of the fact that a
lawyer often has to act upon uncertain or incomplete evidence of the
situation.”  V.R.Pr.C., Scope.  This admonition resonates here.

¶ 18.        
For our review we asked for briefing from the United States Attorney,
the Attorney General of Vermont, and the Defender General, along with the
Office of Disciplinary Counsel, concerning the existence and scope of
exceptions to Rules 4.1 and 8.4(c) for prosecuting attorneys and defense
attorneys in criminal matters.  We also requested briefing on the
responsibility of attorneys for the activities of police, investigators, or
other agents acting on their behalf.  The Court is aware that there may be
circumstances in which misrepresentations that facially violate the rules are useful,
perhaps even necessary, to the functioning of the law-enforcement and judicial
systems.  Attorneys general and state’s attorneys, as part of that system,
may employ such methods themselves, or may direct others to employ them, as
they investigate discrimination, consumer fraud, or other crimes.[3]  Some courts and advisory panels
have concluded that Rule 4.1 does not apply to prosecuting attorneys’
activities, or applies differently to them than to other attorneys.  Many
courts and panels, too, have concluded that as a matter of fairness the
prosecutorial exceptions to the rule must also extend to the defense bar.

¶ 19.        
Having reviewed the briefing and considered the questions examined
therein, we conclude that any exception to the prohibitions in Rule 4.1 should
come, not summarily from this Court, but rather through a process that allows
input from, and collaboration among, all of the groups potentially affected by
a rule change.  To this end, we will establish, by separate administrative
order, a joint committee comprised of members from the Civil Rules Committee,
the Criminal Rules Committee, and the Professional Conduct Board, to consider
whether the rules should be amended to allow for some investigatory misrepresentations,
and, if so, by whom and under what circumstances.  We make no comment
today on the merits of the questions that we will charge the committee to
consider.

III. 
Sanction

¶ 20.        
The hearing panel adopted disciplinary counsel’s recommendation that the
appropriate sanction is a private admonition.  Disciplinary counsel, while
advocating on appeal that we find an additional rule violation, continues to
support a private admonition.  Our review of the panel’s sanction decision
is deferential.  In re Farrar, 2008 VT 31, ¶ 5, 183 Vt. 592, 949
A.2d 438.  We have been particularly deferential to panel decisions when
the panel has relied on the ABA Standards for Imposing Lawyer Sanctions (ABA
Standards), which we have relied upon in the past.  See In re Karpin,
162 Vt. 163, 173, 647 A.2d 700, 706 (1993) (per curiam).  The panel did so
here.

¶ 21.        
The hearing panel first noted that the attorneys here had not violated
any duty to their clients, but rather had violated the rules out of a “determination
to defend their client against serious criminal charges.”  In so doing, as
the panel stated, respondents had violated their duty to the public, but did so
only in an effort to protect their client.

¶ 22.        
ABA Standards § 5.13 provides that public reprimand “is generally
appropriate when a lawyer knowingly engages in any other conduct that involves
dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on
the lawyer’s fitness to practice law.”  ABA Standards, in
ABA Compendium of Professional Responsibility Rules and Standards 429 (2008
ed.).  ABA Standards § 5.14 provides that a private admonition “is
generally appropriate when a lawyer engages in any other conduct that reflects
adversely on the lawyer’s fitness to practice law.”  Id.[4]

¶ 23.        
The hearing panel noted that the severity of the sanctions provided for
in the two rules depends in part on respondents’ mental state.  Although
the panel correctly noted that respondents’ mental state was more than merely
negligent, the panel did not find, and nor do we, that respondents’ mental
state was particularly culpable.  Respondents found themselves in a very
unusual set of circumstances and acted in the best interests of their client, not
for any personal gain.  We do not find that respondents’ mental state
argues in favor of a severe penalty. 

¶ 24.        
The panel’s decision to order a private admonition was also premised on
several mitigating factors.  Respondents cooperated with disciplinary
counsel and were motivated by a desire to help their client rather than advance
their own selfish ends.  See id. at 434-35 (listing factors which
may be considered in mitigation under ABA Standards § 9.32).  Finally, the
panel noted our statement, in Administrative Order 9 Rule 8(A), that “in cases
of minor misconduct, when there is little or no injury to a client, the public,
the legal system, or the profession, and when there is little likelihood of
repetition by the lawyer, . . . an admonition [may] be imposed.”  Here,
there was no injury to the client, little damage to the public trust, the legal
system, or the profession, and nothing in the record suggests a likelihood of
repetition.

¶ 25.        
Thus, we affirm the panel’s conclusion that respondents violated Rule
4.1 and uphold its imposition of a private reprimand for the reasons stated
above.  Accordingly, we hereby privately reprimand respondents for
violating Rule 4.1 by falsely denying that they were recording a telephone
conversation with a potential witness. 

Affirmed.

 


  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 

 

¶ 26.        
BURGESS, J., concurring.  I concur, reluctantly, in
affirming the violation of Rule 4.1 because that rule does expressly, and
broadly, prohibit all intentionally dishonest representations by attorneys,
even when such misrepresentations are otherwise legal and serve a lawyer’s
duty.  Our conclusion that technically dishonest conduct strictly on
behalf of a client’s legitimate interests violates Rule 4.1 as written, but not
Rule 8.4, appears to be at odds with what are otherwise fundamental obligations
of government and defense attorneys.  Bar counsel insists that no such
issue arises here, but the wider impact of this ruling on the investigative
operations of the executive branch, and its chilling implications for the
public and private defense bar, are inescapable and troubling.  

¶ 27.        
It seems at least unclear whether the judicial branch, through an
ethical rule, might unconstitutionally interfere with valid, and even
statutory, executive branch functions directed by attorneys supervising
undercover discrimination, consumer fraud, and criminal investigations that
require surreptitious taping and deceptive impersonations, including those
authorized by warrant.  See, e.g., V.R.Pr.C. 8.4(a) (declaring it
misconduct for a lawyer to violate the rules “through the acts of another”);
V.R.Pr.C. 5.3(b) & (c) (making a supervising lawyer responsible for
investigator compliance with the rules and professional obligations of the
lawyer).  Related separation of powers questions, as well as due process
and equal protection issues, arise over judicial curtailment of otherwise legal
and valid tactics available to public defender investigators looking into
criminal allegations against their clients.[5]  

¶ 28.        
Not presented in an actionable context in the instant appeal, such
issues remain unresolved.  Equally unresolved, then, is the potential for
ethical violation by attorneys involved in law enforcement and criminal defense
who, without lucre or malice, oversee entirely legal investigative strategies
executed by staff or agents.  Failure of the rules to recognize and allow
for justified and necessary deception in the course of law enforcement and
defense investigation is reminiscent of Secretary of State Henry Stimson’s
foolish prohibition of diplomatic codebreaking between the World Wars on the
high-minded premise that “Gentlemen do not read each other’s mail.”[6] 
Common sense might dictate that such a blind principle, like Rule 4.1 found
violated in the instant case, ignores the legal and objectively legitimate
demands of the real world.  

¶ 29.        
These points are raised only to lament the unfortunate absurdity of this
violation and to emphasize the need for the committee to reconsider the literal
application of Rule 4.1 to executive and defense investigations relating to law
enforcement. 


  
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  

 

 

¶ 30.        
REIBER, C.J., concurring in part and dissenting in part.  
While I concur with parts I and III of the majority opinion and agree that the
attorneys violated Rule 4.1, that they should be sanctioned with a private
admonition, and that we should establish a joint committee to consider amending
the rules, I dissent from part II of the majority’s opinion.  In my view,
the attorneys also violated Rule 8.4(c) when they lied to a potential witness
about whether they were recording a telephone conversation.  In short, I
cannot agree with the majority’s conclusion that bold-faced lying is not
“conduct involving dishonesty, fraud, deceit or misrepresentation.” 
V.R.Pr.C. 8.4(c).  

¶ 31.        
Rule 8.4 provides in relevant part: “It is professional misconduct for a
lawyer to . . . (c) engage in conduct involving dishonesty,
fraud, deceit or misrepresentation.”  The hearing panel concluded that
although there was a “misrepresentation to the witness,” the conduct in
question was not “so egregious that it indicates that the lawyer[s] charged
lack[] the moral character to practice law.”  Accordingly, the panel found
no violation of Rule 8.4(c), which it concluded was intended to apply only
to such egregious conduct as commingling of client funds, forging fee
agreements, or making false statements on attorney-licensing statements. 
I disagree with the panel’s narrow interpretation of Rule 8.4(c).

¶ 32.        
Rule 8.4 generally governs “misconduct.”  It provides, in pertinent
part, as follows:

 
It is professional misconduct for a lawyer to:

 
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly
assist or induce another to do so, or do so through the acts of another;

 
(b) engage in a “serious crime,” defined as illegal conduct involving any
felony or involving any lesser crime a necessary element of which involves
interference with the administration of justice, false swearing, intentional
misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft,
or an attempt or a conspiracy or solicitation of another to commit a “serious
crime”;

 
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

 

V.R.Pr.C. 8.4.  

 

¶ 33.        
The rule does not explicitly contain the limit that the hearing panel
inferred—that it applies only “to conduct so egregious that it indicates that
the lawyer charged lacks the moral character to practice law.”  The panel
cited several previous Vermont disciplinary rulings in which more serious
conduct was found to violate Rule 8.4(c), and the panel relied upon those
decisions to draw the conclusion that only such serious conduct violates
Rule 8.4(c).  Upon close inspection, this narrow interpretation is
untenable.

¶ 34.        
The rationale for narrowly construing subsection (c) is, principally,
the comment published alongside Rule 8.4.  The comment does not explicitly
limit its reach to any single subsection of the rule, but its language strongly
suggests that it is meant to apply only to subsection (b).  The comment
reads as follows:

 
Many kinds of illegal conduct reflect adversely on fitness to practice law,
such as offenses involving fraud and the offense of willful failure to file an
income tax return.  However, some kinds of offenses carry no such
implication.  Traditionally, the distinction was drawn in terms of
offenses involving “moral turpitude.”  That concept can be construed to
include offenses concerning some matters of personal morality, such as adultery
and comparable offenses, that have no specific connection to fitness for the
practice of law.  Although a lawyer is personally answerable to the entire
criminal law, a lawyer should be professionally answerable only for offenses
that indicate lack of those characteristics relevant to law practice. 
Offenses involving violence, dishonesty, breach of trust, or serious
interference with the administration of justice are in that category.  A
pattern of repeated offenses, even ones of minor significance when considered
separately, can indicate indifference to legal obligation.

 

V.R.Pr.C. 8.4 cmt.  As the
opening clause of the comment suggests, it applies directly to subsection (b)
only.  That subsection concerns illegal acts and prohibits only those acts
that involve, among other things, intentional misrepresentation, fraud, or
deceit.  Subsection (b) is the only subsection of Rule 8.4 that, like the
comment, places its focus on illegal conduct.  By contrast, subsection (c)
concerns all “conduct” without limitation as to legality.  The
illegality-centered language of the comment strongly suggests that the comment
is not meant as a guide to subsection (c) at all.  Thus, the hearing panel
erred in relying on the comment in support of its conclusion that Rule 8.4(c)
should be read narrowly.

¶ 35.        
The majority opines that Rule 8.4(c) should be construed as prohibiting
only “egregious” misrepresentations because to construe it otherwise would
render Rules 4.1 and 8.4(c) redundant.  Ante, ¶¶ 12, 14. 
It further concludes that because Rule 4.1 already forbids “false statement[s]
of material fact” made in “the course of representing a client,” Rule 8.4(c)
must be construed as applying only to misrepresentations that are not covered
by that rule.  See ante, ¶ 14.  The conclusion of the
majority and of the hearing panel below was derived largely from a law review
article that was concerned only with the implications of misrepresentations
made by discrimination testers as to their identity and purpose—facts which the
article concluded are not “material” and which may, therefore, be falsified
without violating Rule 4.1.  See D. Isbell & L. Salvi, Ethical
Responsibility of Lawyers for Deception by Undercover Investigators and
Discrimination Testers: an Analysis of the Provisions Prohibiting
Misrepresentation Under the Model Rules of Professional Conduct, 8 Geo. J.
Legal Ethics 791, 817 (1995).  Thus, according to the authors of that
article, it would be incongruous to construe Rule 8.4(c) as prohibiting “lesser
misrepresentations than those prohibited by Rule 4.1(a)—e.g., those involving
less than material misrepresentations—but rather [Rule 8.4(c)] must apply to
graver ones.”  Id. (emphasis omitted).  I find this logic
unpersuasive in the context of the Rules of Professional Conduct.

¶ 36.        
While, as a general matter, it is reasonable to presume that the
drafters of rules do not intend to create redundancies, see ante,
¶ 14, the interpretive presumption against redundancy is weaker in the
Rules of Professional Conduct than in other contexts.  Here, penalties are
assessed based not on the number of transgressions, but rather on the totality of
the circumstances surrounding the misconduct.  See V.R.Pr.C., Scope
(“Moreover, the rules presuppose that whether or not discipline should be
imposed for a violation, and the severity of a sanction, depend on all the
circumstances, such as the willfulness and seriousness of the violation,
extenuating factors and whether there have been previous violations.”); In
re Karpin, 162 Vt. 163, 173, 647 A.2d 700, 706 (1993) (per curiam) (“[T]he
factors to be considered in imposing sanctions are the duty violated, the
lawyer’s mental state, the actual or potential injury caused by the lawyer’s
misconduct and the existence of aggravating or mitigating factors.” (citation
omitted)).  The mere fact that a single act may be a violation of two
rules does not require us to adopt an interpretation of Rule 8.4(c) that is not
supported by the language of the rule.

¶ 37.        
Regardless of whether the majority is correct to place so much weight on
avoiding redundancies here, ante, ¶ 14, the majority’s
interpretation of Rule 8.4(c) does not avoid surplusage.  Rather, the
interpretation adopted by the majority today—in holding that Rule 8.4(c)
applies only to conduct that “reflects on an attorney’s fitness to practice
law,” ante, ¶ 12—makes Rule 8.4(c) superfluous in light of Rule
8.4(h), which already prohibits “conduct which adversely reflects on the
lawyer’s fitness to practice law.”[7] 
Thus, resorting to the interpretive principle of avoiding surplusage does not
get us anywhere in determining the proper scope of Rule 8.4(c).  

¶ 38.        
A better interpretive principle to apply here would be to avoid
vagueness.  Cf., e.g., In re Supreme Court Advisory Comm. on Prof’l
Ethics Opinion No. 697, 911 A.2d 51, 59 (N.J. 2006) (noting that “vague[]
and ambigu[ous]” provisions “are not appropriate as ethics standards”). 
As one court has noted, “[i]f attorneys’ violations of ethical rules are to
have implications for litigation, as well as their own disciplinary status, the
standards against which their conduct is to be measured should be consistent
and clear.”  Miano v. AC & R Adver., Inc., 148 F.R.D. 68,
83 (S.D.N.Y. 1993) (emphasis added).  Whether certain conduct “reflects on
an attorney’s fitness to practice law,” ante, ¶ 12, is much more
vague—and subject to a much wider array of inconsistent applications—than
simply determining whether conduct “involv[es] dishonesty, fraud, deceit or
misrepresentation,” Rule 8.4(c).  Rather than reading in something that is
not in the rule itself and that only introduces vagueness, I would limit our
interpretation of Rule 8.4(c) to its actual language, which is clear on its
face.

¶ 39.        
Although the majority cobbles together some support for the hearing
panel’s narrow construction of Rule 8.4(c), most of the existing authority goes
the other way and suggests that Rule 8.4(c) is “broad and . . . encompasses
conduct both within and outside the realm of the practice of law.”  ABA
Ctr. for Prof’l Responsibility, Annotated Model Rules of Professional Conduct 583
(6th ed. 2007).  The courts and advisory committees that have considered
Rule 8.4(c) in contexts similar to this one have, in the main, concluded that
Rule 8.4(c)’s prohibition—or identical provisions of other rules—on “conduct
involving dishonesty, fraud, deceit or misrepresentation” prohibits attorneys
from affirmatively misleading third parties as to whether a conversation is
being recorded.  See ABA Comm. on Ethics and Prof’l Responsibility, Formal
Op. 01-422, 1201:101 (2001) (“A lawyer may not, however, . . . falsely
represent that a conversation is not being recorded.”); Anderson v. Hale,
159 F. Supp. 2d 1116, 1117 (N.D. Ill. 2001) (recording telephone calls without
disclosing as much violates Local Rule 83.58.4(a)(4), which like Rule 8.4(c)
prohibits “dishonesty, fraud, deceit or misrepresentations”); People v.
Wallin, 621 P.2d 330, 331 (Colo. 1981) (recording conversation without
permission of other party violates provision of Code of Professional
Responsibility forbidding, like Rule 8.4(c), conduct involving dishonesty,
fraud, deceit, or misrepresentation); Iowa Supreme Court Bd. of Prof’l
Ethics & Conduct v. Plumb, 546 N.W.2d 215, 217-18 (Iowa 1996) (noting
that it “is not the use of recording devices, but the employment of artifice or
pretense, that truly poses a threat to the trust which is the bedrock of our
professional relationships,” and holding that surreptitious recording for
purposes of future litigation against judge was “conduct involving dishonesty,
fraud, deceit, or misrepresentation”); Prof’l Ethics Comm’n of the Me. Bd. of
Overseers of the Bar, Op. 168 (1999) (Maine Bar Rule 3.2(f), which parallels
Vermont’s Rule 8.4(c), prohibits affirmative misrepresentations about
recording, if not recording itself); State Bar of N.M. Ethics Advisory Comm.,
Formal Ethics Advisory Op. 2005-03 (2005) (provision identical to Rule 8.4(c)
precludes “the secret recording of a witness interview by a lawyer . . . if
such a recording would involve deceiving the witness either by commission or
omission”); Okla. Bar Assoc. Ethics Op. 307 (1994) (noting that, although
recording is not per se deceptive, Rule 8.4(c) requires that “if inquiry is
made regarding tape recording, . . . the lawyer must be candid and truthful”);
Or. State Bar, Formal Op. 2005-156 (lawyers may record conversations only if
“substantive law does not prohibit a recording” and “in the absence of conduct
that would affirmatively lead a person to believe that no recording would be
made”); Prof’l Ethics Comm. for the State Bar of Tex., Op. 575 (2006) (same). 

¶ 40.        
The majority is correct that the Supreme Court of Mississippi, in Mississippi
Bar v. Attorney ST, 621 So. 2d 229, 233 (Miss. 1993), concluded that
misrepresentations about the taping of a conversation with a witness violated
Rule 4.1 but not Rule 8.4(c).  In that case, however, the court engaged in
no independent analysis of Rule 8.4(c) at all, even though the tribunal below
had analyzed the conduct under Rule 8.4(c) and not Rule 4.1.  No
explanation is given in Attorney ST for the court’s decision to find no
violation of Rule 8.4(c), and the case, therefore, does not support a narrow
reading of that rule merely because it omits any discussion of it. 
Similarly, the Minnesota Lawyers Professional Responsibility Board has stated, without
consideration or independent analysis of Rule 8.4(c), that misrepresentations
about the recording of conversations violate Rule 4.1.  See K. Jorgensen, Opinion
Barring Secret Recording of Conversations is Repealed, Minnesota Lawyer,
June 3, 2002, available at
http://www.courts.state.mn.us/lprb/fc02/fc060302.html.  I do not believe
that these and similar authorities are enough to support the hearing panel’s
narrow reading of Rule 8.4(c), particularly when contrasted with the plain
language of the rule itself and all of the authority that go the other
way.  See supra, ¶ 39 and sources cited therein.  Indeed,
although the majority claims that a “considerable body of authority” supports
its position, ante, ¶ 9, it is telling that the majority ultimately
rests upon the “silence” of one court and one ethical opinion that state that
certain actions violate Rule 4.1, but say nothing about whether those actions
violate Rule 8.4(c).  See ante, ¶ 16.  This logic is
untenable.  Cf., e.g., Rupard v. Astrue, 627 F. Supp. 2d 590, 596
(E.D. Pa. 2009) (holding that when a judge “made no finding one way or the
other,” the judge’s “silence cannot be interpreted as a determination” on that
issue).  

¶ 41.        
The majority also goes too far in its statement that a broad
interpretation of Rule 8.4(c) would open the door to disciplinary proceedings
based on “any untruth told to anyone for any purpose,” ante, ¶ 14,
even “giving a false reason for breaking a dinner engagement,” ante,
¶ 12.  As the majority itself notes, “the rules are ‘rules of
reason.’ “  Ante, ¶ 17 (quoting V.R.Pr.C., Scope).  In
addition, the rules specifically state that “whether or not discipline should
be imposed . . . depend[s] on . . . the . . . seriousness
of the violation.”  V.R.Pr.C., Scope.  A broad interpretation of Rule
8.4(c), therefore, would not invite disciplinary proceedings based upon
something as trivial as a lawyer’s untruthful statement for missing a dinner
engagement.

¶ 42.        
Although I conclude that respondents violated Rule 8.4(c) in addition to
Rule 4.1, I agree with the majority that the sanction imposed by the panel
remains appropriate here.  See ABA Standards for Imposing Lawyer
Sanctions, in ABA Compendium of Professional Responsibility Rules
and Standards 421 (2008 ed.) (“The standards thus are not analogous to criminal
determinate sentences, but are guidelines which give courts the flexibility to
select the appropriate sanction in each particular case of lawyer
misconduct.”).  My conclusion that the offending conduct violated two
rules rather than one would not require the imposition of a more onerous
sanction.

¶ 43.        
I am authorized to state that Justice Dooley joins in this concurrence
and dissent.

 


  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief Justice
 
  

 















[1]  The hearing panel characterized the opinion’s
treatment of false statements as dictum.  We pause to note that the
distinction between the holding of a case and dictum is of limited significance
in a bar association advisory ethics opinion—like Formal Opinion 01-422—as
opposed to a contested case in which a court must resolve a live dispute
arising from particular facts.  Indeed, it is perhaps most accurate to
characterize the entire Formal Opinion as dictum insofar as none of it
was necessary to resolve a live controversy.  In any event, we do not
agree with the panel’s conclusion that Formal Opinion 01-422 was equivocal
about the propriety of lying about recording conversations.





[2]  The Vermont Rules of Professional Conduct were
amended effective September 1, 2009.  As the acts underlying this
disciplinary action occurred prior to the amendment, we base this opinion on
the prior version of the Rules and associated comments.





[3]  One of the amici suggested that warrants offer
a safe harbor, but does not explain how a judicial finding of probable cause
for a wire warrant, so called, could authorize an ethical violation prohibited
by the Rules.





[4]  As noted in ABA Standards § 2.6, the terms
“admonition” and “private reprimand” are synonymous.  Id. at 424.





[5]  Respondents here, for example, were interrupted
at almost the last minute of their trial defense of a client charged with
second degree murder to immediately respond to an unsolicited claim by a
jailhouse tipster of exculpatory evidence implicating another as the murderer.
 That the tipster, during the phone interview, then expressed concern
about being recorded would cause reasonable attorneys to question whether an
inmate, a stranger to them and potentially a target of retribution for
snitching, would volunteer his proffered information on the record, or could be
relied upon to testify to the same effect, or at all, in court.  Given the
exigent circumstances and the absence of any corrupt motive whatsoever, the
inherent uncertainty of the situation was arguably sufficient to justify the
surreptitious recording.





[6]  H. Stimson & M. Bundy, On
Active Service in Peace & War 188 (1948).  Secretary of State
Stimson (Hoover Administration, 1929-33) yielded his views as Secretary of War
Stimson in 1940, citing changing times.  D. Kahn, The Codebreakers
360 n.* (1996).





[7] Although this problem of surplusage is arguably no
longer a worry now that recent amendments to the Rules of Professional Conduct
have deleted subsection (h), the majority correctly recognizes that those
amendments are not applicable to the current proceedings before the
Court.  Ante, ¶ 5 n.2.  Further, because there is no
indication that the recent amendments were an attempt to clarify the original
meaning of Rule 8.4, see Washington v. Pierce, 2005 VT 125, ¶ 33,
179 Vt. 318, 895 A.2d 173 (recognizing that later clarifications can be helpful
in interpreting a statute), the recent amendments should not affect our
interpretation of Rule 8.4, see Ins. Co. of Pa., 2009 VT 92, ¶ 12,
___ Vt. ___, ___ A.2d ___ (citing Coca Cola Bottling Co. of Northampton v.
Comm’r of Revenue, 473 N.E.2d 187, 189 n.3 (Mass. 1985), for the
proposition that “[w]hat the . . . legislation involved in this case means
cannot rationally be influenced by [subsequent] legislation”).  If the
recent amendments to Rule 8.4 have any significance on the present case, it is
that in amending that rule we did not add any of the language that the majority
now reads into Rule 8.4(c).